712 A.2d 597

In re ADOPTION/GUARDIANSHIP NO. TPR970011 IN the CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY.

No. 1762, Sept. Term, 1997.

Court of Special Appeals of Maryland.

July 1, 1998.

**464**

Denise Oakes Shaffer, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before WENNER and SONNER, JJ., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

THEODORE G. BLOOM, Judge (retired), Specially Assigned.

Appellee, the Prince George's County Department of Social Services (DSS), filed a petition in the Circuit court for Prince George's County for guardianship with the right to consent to adoption, or long-term care short of adoption, of a five-year-old boy. Approximately four and one-half months after being served with a copy of the petition and a show cause order, appellant, the child's father, filed an objection to the petition. This appeal is from an order striking the father's objection to the guardianship petition.

## BACKGROUND

The show cause order served on appellant notified him that if he wished to object to the guardianship he must file, within thirty days, an objection (a form for which was attached to the order); that failure to object by the stated deadline could result in termination of his parental rights without his consent; that he was entitled to consult an attorney; and that if he were indigent an attorney might be appointed to represent him.

Appellee moved to strike appellant's objection as untimely. At a hearing on that motion, appellant testified that his reading skill "is not strong"; that he had a third grade education in Jamaica; that he worked as a carpenter; that he tried to read "this paper" (the show cause order); that he talked to his sister, who told him that she was trying to get a lawyer for him; that he had no money to hire a lawyer. He did not understand the show cause order; he did not understand that if he did not have money for a lawyer the court would provide counsel for him. At that point in appellant's testimony, the court interrupted, stating:

> I don't want to cut you off, but there is not a darn thing I can do for you. You fall right in the auspices of that case [*In re: Adoption/Guardianship No. 93321055/CAD in the Circuit Court for Baltimore City*, 344 Md. 458, 687 A.2d 681 (1997) ].

Even though you couldn't read that well, you knew some-
one. When you got the papers from the sheriff you had
your sister, who read them to you. You knew that this was
a controversy over your child. You knew that. I am sure
she told you to get private counsel. Even though you had
CINA counsel or the Public Defender down below in the
case, you missed the deadline. These deadlines are written
in just about granite. Maybe not granite. We could chip a
little away from it. But not in your case.

Your objection, filed late, is stricken, and the case will
proceed without you.

James M. Diehl, who had represented appellant during the
juvenile court proceedings that preceded the guardianship
petition, in which appellant's son was determined to be a child
in need of assistance (CINA), proffered the following informa-
tion:

Mr. Diehl was the attorney who represented appellant in
the CINA proceedings "for the last nine or twelve hearings
that [appellant] attended—[appellant] was *pro se* in the
first"—but he was not notified of the filing of the guardian-
ship petition until Friday, 5 September 1998. (The thirty
day period for response to the show cause order expired 23
May 1997.) Mr. Diehl was told of the pending guardianship
petition during a telephone conversation with Jonathan
Gladstone, the attorney representing the child's mother in
that case. Appellant's objection was filed on the next
business day following that telephone conversation.

Mr. Diehl further proffered that "the records in the
CINA file, including reports of Social Services and a psy-
chological evaluation done on [appellant and the child's
mother] describes [sic] appellant as functionally illiterate."

On 23 May 1997, the last day of the thirty-day period for
filing an objection to the guardianship petition, Mr. Diehl
appeared with appellant at a CINA hearing. Appellant
asked, "What is this all about?" He did not mention that he
had received the show cause order. Had Mr. Diehl, as the
attorney who represented appellant known that there was a

show cause order about to expire on that date, he would have seen to it that appellant filed a timely objection.

Mr. Diehl referred the court to the statutory requirement that the attorney who represented a parent in a CINA proceeding be notified of the filing of a petition for guardianship with right to consent to adoption or long-term care short of adoption. Md.Code (1984, 1991 Repl.Vol.), § 5–322 of the Family Law Article (F.L.). The court's response to Mr. Diehl's proffer was, "I see what you are saying, but his sister told him. Even though he is a functional illiterate, my decision is the same."

Appellee's counsel did not dispute Mr. Diehl's proffer. She informed the court that on 1 April 1997, the day after the guardianship petition was filed, appellee sent a letter to Mrs. McGinley, the head of the CINA division of the office of the public defender, notifying her of the filing of the petition. Appellee's attorney further acknowledged that the notice was not sent to Mr. Diehl, who was a "panel attorney," *i.e.*, an attorney in private practice to whom the office of the district public defender may refer a case when there is the possibility of conflict between a party represented by the public defender and another party entitled to be represented by the public defender's office. In this case, the child's mother was being represented by the district public defender's office throughout the CINA proceedings.

The mother of the child was also late in filing an objection to guardianship. Appellee's motion to dismiss her objection on that ground was denied on the basis of a concession that she was under a mental disability, and that service was made upon an attorney appointed to represent her and not upon her personally. Appellee's motion to strike appellant's objection was granted, however, for the stated reason that the court could not entertain the objection because appellant's case was governed by the decision of the Court of Appeals in *In Re: Adoption/Guardianship No. 93321055/CAD, supra.*

ISSUES

Appellant raises a single issue: whether the court erred in granting appellee's motion to strike his objection to the show cause order. Appellee, however, presents us with another issue, one that concerns our jurisdiction: whether the appeal should be dismissed as premature. We shall deal with the jurisdictional issue first.

## I

Appellee asserted that this appeal must be dismissed because there is no final judgment. The case is not over; it is still pending with regard to the mother's parental status. Rule 2–602(a) provides that, except as provided in section (b) of the rule, an order or other form of decision that adjudicates fewer than all of the claims in an action or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action is not a final judgment, does not terminate the action as to any of the claims or any of the parties, and is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties. Section (b) of the rule, however, allows a court, upon a determination that there is no just reason for delay, to direct the order of a final judgment as to one or more but fewer than all the claims or parties.

Appellant's response to that contention recognized that at the time the appeal was filed there was no final judgment but asserted that the order striking his objection to the requested guardianship was an appealable interlocutory order under either of two theories:

(a) The order was one of the statutorily recognized appealable interlocutory orders listed in Md.Code (1974, 1995 Repl.Vol.), § 12–303 of the Courts and Judicial Proceedings article. Appellant specifically relies on subsection (3)(x)of § 12–303, which authorizes an appeal from an interlocutory order "Depriving a parent, grandparent, or

natural guardian of the care and custody of his child, or changing the terms of such an order."

(b) The order was appealable under the collateral order doctrine, which permits an appeal from an interlocutory order that satisfies the following requirements:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment.

*Montgomery County v. Stevens*, 337 Md. 471, 477, 654 A.2d 877 (1995).

It is arguable that the order appealed from deprived appellant of the "care and custody" of his son; although orders passed in the CINA proceeding had already done that on a temporary basis, the effect of the order striking appellant's objection was, in effect, a determination that he had consented to the guardianship and thus may be considered as having changed the terms of the order depriving him of custody. The order dismissing appellant's objection to the guardianship petition meets the first three requirements of the collateral order doctrine; whether it meets the fourth requirement is disputable. Appellee argues that appellant could challenge the order on an appeal from the final judgment if the court eventually grants the guardianship petition over the objections of the mother. Appellant's response to that argument is that the order complained of deprives him of any right to notice of further proceedings; he might not know when a final judgment, from which an appeal could be taken, is entered.

We need not resolve the dispute raised by appellee's contention that the appeal was premature. On 27 May 1998, one week prior to oral argument, the circuit court, on appellant's motion and over appellee's objection, signed and filed an order, pursuant to Rule 2–602(b), determining that there was no just reason for delay and making the order appealed from a final judgment as to appellant. That exercise of discretion by

the trial judge to certify the judgment against appellant as final does not preclude review of that discretionary act by this Court. *Diener Enterprises v. Miller,* 266 Md. 551, 295 A.2d 470 (1972). In exercising that discretion, the trial court should balance the exigencies of the case with the policy against piecemeal appeals and then allow a separate appeal only in "the very infrequent harsh case." *Starfish Condominium Ass'n v. Yorkridge Service Corp.,* 292 Md. 557, 567–69, 440 A.2d 373 (1982).

 We believe that the certification of the judgment against appellant as final, under Rule 2–602(b), was an appropriate exercise of discretion in this case. As appellant's counsel pointed out to the court in his motion for certification of finality, the court was convinced at the time it struck appellant's objection that the decision was immediately appealable, and this appeal was promptly noted on that basis. If appellee were to succeed in having the appeal dismissed as premature and then were to succeed in the guardianship proceeding against the mother, a subsequent appeal by appellant from a final judgment would be on a matter unrelated to the merits of the case and, if successful, would require a retrial on the merits.

Exercising our discretion under Md. Rule 8–602(e)(1)(D), we treat the notice of appeal as if it had been filed "on the same day as, but after, the entry of the judgment." So treated, this appeal was a timely appeal from a final judgment.

## II

The procedures governing adoptions and guardianships with right to consent to adoption or long-term care short of adoption are set forth in Md.Code (1984, 1991 Repl.Vol.), §§ 5–301 through 5–330 of the Family Law Article (F.L.) and Maryland Rules 9–101 through 9–113, which were adopted by the Court of Appeals to implement those statutory procedures. At issue in this case are two provisions that were added to F.L. § 5–322 by Chapter 282 of the Acts of 1987, which originated as House Bill 590. Those provisions deal with notice to the

parents of a child when a petition for adoption or guardianship with right to consent to adoption is filed, and with the consequences of failing to file a timely objection to the petition after receipt of such notice.

Subjection (a) of F.L. § 5-322 provides:

(1)(i) Subject to paragraph (2) of this subsection, a petitioner shall give to each person whose consent is required notice of the filing of a petition for adoption or a petition for guardianship.

(ii) In addition to the notice of filing required under subparagraph (i) of this paragraph, if a petition for guardianship is filed after a juvenile proceeding in which the child has been adjudicated to be a child in need of assistance [CINA], a neglected child, or an abused child, a petitioner shall give notice of the filing of the petition for guardianship to:

1. The attorney who represented a natural parent in the juvenile proceeding; and

2. The attorney who represented the minor child in the juvenile proceedings.

Paragraph (2) of subsection (a) does not apply to this case. It provides that notice need not be given to a person whose consent is filed with the petition if the consent includes a waiver of the right to notice of the filing of the petition. Paragraph (3) provides that the required notice shall be by entry and service of a show cause order. That paragraph is implemented by Rule 9-105(h), which prescribes the form and content of the show cause order and includes a simple form to be used for noting an objection to the petition and for requesting the appointment of counsel. Paragraph (1)(ii) of § 5-322, requiring notice to the parent's former attorney, is implemented by Rule 9-105(f), which specifies that the notice to the attorney who represented the parent and the attorney who represented the child in a prior juvenile proceeding shall be by sending the attorney a copy of the petition and show cause order by first class mail.

Subsection (d) of F.L. § 5–322 provides that, if a person is notified under § 5–322 and fails to file a notice of objection within the time stated in the show cause order (thirty days after service if, as in this case, service is to be made on a person within this state, pursuant to Rule 9–107(b)(1)), the court shall consider the person who is notified to have consented to the adoption or guardianship and the petition shall be treated in the same manner as a petition to which consent has been given.

The circuit court's order striking appellant's objection to the guardianship petition was based on subsection (d) of § 5–322 as interpreted by the Court of Appeals in *In Re: Adoption/Guardianship No. 93321055*, 344 Md. 458, 687 A.2d 681 (1997). That case held that the deemed consent if a parent does not timely object to the petition, unlike a voluntary consent, may not be revoked; that the consent becomes fully effective when the time for filing an objection expires; that the court in which the petition was filed may neither extend the deadline for filing an objection to the petition nor accept a late filing; and that the statutory scheme of regarding the failure to file a timely objection as an irrevocable deemed consent does not facially offend any due process or equal protection rights of the parent. In view of that decision of the Court of Appeals, the circuit court was persuaded that appellant had consented to the guardianship petition by failing to file a timely objection; that the consent was irrevocable; and that the untimely objection could not be accepted.

Appellant's contention that the court below erred is based on subsection (a) of § 5–322. DDS, the petitioner, was required by the subsection and the implementing rule to give notice of the filing of the petition not only to appellant but also to Mr. Diehl, the attorney who had represented him in the CINA proceedings, by sending Mr. Diehl a copy of the petition and the show cause order. Appellant asserts that, because appellee failed to comply with that statutory requirement, service of the notice was defective, and to deem that appellant irrevocably consented to the termination of his parental rights by failing to object to the guardianship petition

within thirty days after notification that did not comply with statutorily mandated requirements would deny him due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 24 of the Maryland Declaration of Rights.

 It is well established that the fundamental right of a parent to raise his or her child is in the nature of a liberty interest that is protected under the state and federal constitutions. *In re: Adoption/Guardianship Nos. CAA92–10852 and CAA 92–10853 in the Circuit Court for Prince George's County*, 103 Md.App. 1, 12, 651 A.2d 891 (1994). It is an interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397–98, 71 L.Ed.2d 599 (1982). Unquestionably, a parent is entitled to due process of law in a proceeding to terminate his or her parental rights. *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

 Appellee argues that the letter it sent to the office of the Public Defender, notifying that office of the filing of petitions for guardianship in this and several other cases, was adequate compliance with the statutory notice requirement. That argument is based on two premises that we do not accept. Appellee asserts that the statute does not state how notice must be given to the attorney who represented the parent in the CINA proceedings. That assertion, while true in itself, ignores the implementing rule, which required appellee to send the attorney, by first class mail, a copy of the petition and the show cause order. A notice sent to the Office of the Public Defender is not a notice to a panel attorney to whom the Public Defender referred a case because of a possible conflict.

In *Graves v. State*, 94 Md.App. 649, 619 A.2d 123 (1993), this Court stated that district offices of district public defenders [1]

---

1. The State Public Defender is required to appoint a district public defender for each district of the District Court and to establish and maintain suitable offices within the State, with at least one such office

were deemed to be analogous to independent private law firms with respect to conflicts of interest in representing co-defendants in a given case. *Id.* at 670, 619 A.2d 123. The Court noted:

> In every case where a public defender's office represents two or more co-defendants, there is a potential for conflict of interest. Where a public defender concludes that a potential conflict of interest is such that it is required that other counsel be assigned, the case may be assigned to a panel attorney, or the court may be requested to assign counsel. In addition, there is nothing in the law to prevent the case from being transferred to another district public defender's office.

*Id.* It is precisely because the panel attorney is not a member of the public defender's staff and is not connected to the district public defender's office that assignment of a case to him eliminates the potential conflict of interest that arises when the public defender is called upon to represent two or more parties in the same case.

The notice letter sent by appellee to the district public defender's office in this case, although insufficient in form to satisfy Rule 9–105(f), at least put that office on notice of the proceeding against its client, the child's mother. It did not put Mr. Diehl on notice; he was not in, or associated with, that office.

We are left then with a situation in which (a) appellant was personally served with a petition and show cause order that he could not read and did not understand, and (b) DDS failed to notify the attorney who had represented appellant in the CINA proceedings that preceded this case. The court below stressed the fact that appellant showed the papers to his sister, who explained them to him. According to appellant,

---

in each district. Md.Code (1957, 1997 Repl.Vol.), art. 27A, § 3. Each district public defender is authorized to appoint panel attorneys to represent indigent defendants, and the court may appoint counsel where there is a conflict in representing multiple defendants. Art. 27A, § 6.

however, what his sister told him was that he needed to hire a lawyer, which he could not afford to do. That assertion, if true, indicates that appellant's sister did not understand the show cause order either.

In *In re: Adoption/Guardianship No. 93321055, supra,* the Court of Appeals was confronted with an argument that the statutory scheme for deeming that a failure to object to the guardianship petition within thirty days after notice of its filing amounts to a consent that cannot be withdrawn, coupled with a ruling that the trial court has no discretion to permit a belated filing of an objection, may constitute a denial of due process. That argument, the Court noted,

> springs from the fundamental liberty interest that parents have to raise their children, articulated in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

344 Md. at 491, 687 A.2d 681.

The Court then explained:

> *Lassiter, Santosky,* and their progeny recognize three basic principles: (1) parents have a fundamental liberty interest in the care, custody, and management of their children, (2) when the State moves to abrogate that interest, it must provide the parents with fundamentally fair procedures, and (3) the process due to parents in that circumstance turns on a balancing of the three factors specified in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *i.e.,* the private interests affected by the proceeding, the risk of error created by the State's chosen procedure, and the countervailing governmental interest supporting the use of the challenged procedure.

> The first and third *Mathews* factors are obviously important ones in a termination of parental rights action. The private interest is the parent's fundamental right to raise

his or her children, and there are few, if any, rights more basic than that one. The governmental interest in securing permanent homes for children placed into its custody because of an inability or unwillingness of their parents to care for them properly is also strong and vital, however. These are vulnerable and defenseless children, usually at critical stages of their development and having only the government and its agents to turn to for physical and emotional sustenance. Once it appears that reunification with their parents is not possible or in their best interest, the government has not only a special interest, but an urgent duty, to obtain a nurturing and permanent placement for them, so they do not continue to drift alone and unattached. *Compare M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), where the countervailing governmental interest found wanting was only a financial one.

With two strong countervailing interests here, the pivotal issue is the second—the risk of error created by the challenged procedure.

In this regard, the Public Defender conjures up the prospect of a mother who lapses into a coma upon receipt of the show cause order and is, for that reason, rendered unable to file a timely objection. Something so extreme as that might indeed present a due process problem in the particular application of the statute, but the attack here is a frontal one, and, in that context, the risk of error factor is no to be judged by the remote, extreme case that, to the best of our knowledge, has never yet happened and is not ever likely to happen.... In judging the facial validity of the procedure, we must look to the normal case, not to a conjured, hypothetical aberration.

We cannot say that there is *no* risk of error in an absolute deadline, but zero tolerance is not required and is probably not achievable in any procedure. The statutory deemed consent does not exist in a vacuum. It arises only after service on the parent of a show cause order that explains, in plain, simple language, the right to object, how, where, and when to file a notice of objection, and the consequence of not

filing one within the time allowed. A form notice of objection is attached to the order, and all that the parent need do is to sign it, print on it his or her name, address, and telephone number, and mail or deliver it to the address shown in the order. If, as in each of the cases before us, the children have already been declared to be CINA, a copy of the order is also served on the attorney who represented the parent at the CINA proceeding. The order states clearly that the parent has a right to an attorney and may have the right to a court-appointed attorney, and there is a clearly marked space on the objection form for the parent to exercise that right.... [C]urrent Rule 9–107(b) requires the objection to be filed within 30 days after service of the show cause order.

In this setting, we believe that the risk of error in establishing an absolute deadline for filing a notice of objection is relatively small. It is evident to us that, in the normal case ... the parent is given fair and adequate notice of what is required and a fair and adequate opportunity to file a timely notice of objection....

Balancing the three *Mathews* factors, therefore, we conclude that the statutory scheme of regarding the failure to file a timely objection as an irrevocable deemed consent to the petition does not facially offend any due process right of the parent.

344 Md. at 491–94, 687 A.2d 681 (footnote omitted).

This case does not involve the extreme scenario conjured up by the Public Defender in the case before the Court of Appeals. It is, if we accept the proffer of Mr. Diehl, which the court below did not reject, a real instance in which, being a "functional illiterate" as the court found, appellant did not understand that he had to file an objection within thirty days or lose his parental rights.

We shall not base our decision on appellant's lack of education, however. We believe that appellee's failure to notify Mr. Diehl that it had filed a petition for guardianship of appellant's son deprived appellant of the notice that was

statutorily due. Consequently, the thirty day period for filing an objection never began to run, so the objection filed on 8 September 1997 was timely. We reach that conclusion on the basis of the reasoning of the Court of Appeals *in In re: Adoption/Guardianship No. 93321055* and the legislative intent in requiring notice to the attorney who represented the parent in a CINA proceeding.

In *In Re: Adoption/Guardianship No. 93321055,* the Court of Appeals, balancing the three factors specified in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, concluded that "the risk of error created by the State's chosen procedure" is sufficiently small that "the statutory scheme of regarding the failure to file a timely objection as an irrevocably deemed consent to the petition does not facially offend any due process right of the parent." A key phrase in that conclusion, we believe, is "the State's chosen procedure," which in proceedings to terminate parental rights includes not only a deemed and irrevocable consent if the parent fails to file an objection within thirty days after receipt of notice, but also requires that notice be sent to the CINA attorney as well as to the parent. The State has made such notice to the attorney a part of the process that is due the parent.

The legislative intent in enacting Chapter 282 of the Laws of 1987 is evidenced by the Summary of Committee Report of the Senate Judicial Proceedings Committee. House Bill 590, proposed by the Governor's Task Force on Adoption, contained two changes to then existing law: (1) it requires the petitioner for guardianship of a child who has been adjudicated to be a child in need of assistance, a neglected child, or an abused child to give notice of the filing of the petition to the attorney who represented a natural parent in the prior juvenile proceeding; and (2) it requires the court to consider a person who is notified to have consented to the proposed adoption or guardianship if he or she fails to file a notice of objection within the time stated in the show cause order. The Committee report states:

The additional notice requirement in the bill results from concern by the courts regarding adequate notice given to

biological parents. Notice in adoption cases is a particularly difficult problem stemming from the fact that quite often one of the biological parents cannot be identified, cannot be found or refuses to admit involvement. Almost all of the cases which have raised issues of adequate notice and adequate hearings during the past several years have flowed from cases where there were prior court proceedings at the juvenile court level. In all of these cases, the biological parents have appointed or personal counsel at the juvenile level and it appears only logical and fair to have counsel notified along with the natural parents of the termination. Although such notification will probably result in the conducting of more hearings, on balance this result is far preferable to the extraordinary delays which would result from requiring hearings in all such cases.

. . .

The intent of House Bill 590 is to give attorneys representing natural parents in juvenile proceedings notice of the filing of a guardianship petition and to clarify the effect of a failure to respond to the notice.

The bill's purpose is to assure that due process protections are afforded to natural parents in guardianship proceedings and to expedite the process when there is no objection filed.

It is clear, therefore, that the General Assembly deemed the notice to the attorney who had represented the parent in the juvenile proceedings to be a requirement of due process in proceedings to terminate the parental relationship. This case is an example of why notice to the former attorney is important. The attorney would know if the parent, by reason of lack of education or mental problems, would be unable to understand the petition and show cause order or be confused by it and fail to appreciate the significance and the importance of responding if he or she did not consent to the guardianship. As Mr. Diehl proffered, as soon as he found out about the

petition he ascertained appellant's desire and arranged to file an objection.

██ We conclude, therefore, that serving a copy of the petition for guardianship and show cause order on the natural parent who is the subject of the proceedings, without mailing a copy to the attorney who represented that parent in the prior CINA, neglected child, or abused child juvenile proceedings is not adequate notice to trigger the thirty day period within which an objection must be filed to avoid a deemed consent that cannot be revoked, rebutted, or challenged. To hold otherwise would be to deny the parent the due process, as established by the General Assembly, that must be afforded before termination of the parent's fundamental liberty right to raise his or her child.

**JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY APPELLEE.**