STARFISH CONDOMINIUM ASSOCIATION ET AL. *v.*
YORKRIDGE SERVICE CORPORATION, INC. ET AL.

[No. 29, September Term, 1981.]

*Decided January 27, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Sidney Kaplan,* with whom were *Paul Bloomberg* and *Kaplan & Kaplan* on the brief, for appellants and cross-appellees.

*Glenn E. Bushel,* with whom were *Gerard P. Martin* and *Melnicove, Kaufman & Weiner, P.A.* on the brief, for appellees and cross-appellants.

RODOWSKY, J., delivered the opinion of the Court.

Cross petitions for certiorari were granted in this multiple party litigation, prior to consideration of the appeals by the Court of Special Appeals. The principal questions raised concern warranties in sales of real property under Md. Code (1974, 1981 Repl. Vol.), §§ 10-201 through 10-205 of the Real Property Article, and the standing of the council of unit owners of a condominium to sue for alleged breach of such warranties as to common elements. However, we find that there is no final judgment and the appeals must be dismissed. The appealability issue in this case revolves around the claim asserted against one of the defendants below who was said to be "in bankruptcy."

The litigation generally involves Starfish Condominium, located in Ocean City, Worcester County, Maryland. A condominium regime was imposed upon the property by Yorkridge-Graham Joint Venture No. II (the Venture) which consists of Yorkridge Service Corporation, Inc., a Maryland corporation (Service Co.), and R. Walter Graham, III (Graham). Service Co. is a subsidiary of Yorkridge Federal Savings and Loan Association of Baltimore County [1]

---

1. This is the name of the S&L as it appears in that party's initial pleading.

(the S&L). Melvin Berger (Berger) and John J. Davis (Davis) are president and a vice president, respectively, of the S&L and of Service Co. Starfish Condominium Association (the Council) is the council of unit owners of Starfish Condominium.

On May 11, 1976 the Council and certain owners of units in Starfish Condominium filed a bill of complaint in the Circuit Court for Baltimore County in equity against the Venture, Service Co., Graham, the S&L, Berger and Davis alleging, *inter alia,* breaches of warranty.[2] On July 2, 1976 a second bill of complaint against the same defendants was filed in the same court by additional unit owners who also alleged breaches of warranty. All of the defendants were represented in both cases by the same counsel. The cases were consolidated. Trial commenced July 30, 1979. When the plaintiffs rested, the defendants moved to dismiss. After a period of briefing and an oral argument, the trial court denied the motion to dismiss and the defendants proceeded to introduce evidence. Closing arguments were held off the record. Judgment was entered against the Council, which noted an appeal. Money judgments were entered in favor of the unit owners [3] against the Venture, Service Co. and the S&L. Service Co. and the S&L noted appeals. Judgment was in favor of Berger and Davis. The decree makes no disposition of the claims asserted by the unit owners against Graham. In its opinion filed with the decree, the trial court states that "[t]he other Co-Partner [of the Venture], R. Walter Graham, is in bankruptcy so this proceeding is stayed as to him and no adjudication can be made as to his liability."

There is no express determination that there is no just reason for delay and no express direction that the decree be entered as a final judgment, pursuant to Md. Rule 605 a.[4]

---

2. Prayers for relief requesting an accounting of condominium funds and a mandatory injunction for production of records of the condominium were abandoned in the course of the litigation.

3. The claims of several unit owners were dismissed in the course of the proceeding.

4. Md. Rule 605 a provides in relevant part as follows:

The parties have not enlightened us, either in briefs or oral arguments, as to the factual basis for the trial court's conclusion that no adjudication could be made as to Graham's liability. Nothing in the record extract, and no testimony or exhibits which we can find, bear on any bankruptcy of Graham. The sole reference in the record to a Graham bankruptcy occurred at a conference with the court before the start of trial on July 30, 1979. Counsel for the defendants orally moved to stay the case against Graham on the ground that Graham had filed in bankruptcy, as counsel understood it, in January of 1979 and that, under the federal bankruptcy statutes and rules, that filing automatically stayed any litigation against the bankrupt. The court took the position that it could not act without having some knowledge of the bankruptcy and that the best form of communicating that knowledge would be by documents. Defendants' counsel, while maintaining that proceedings against Graham were stayed in any event, said that "we will try to get you the documentation to keep the record straight" and that "I will have the docket checked at the Bankruptcy Court . . . and find out the status of that." Counsel for the plaintiffs then addressed the subject:

> I have the complete bankruptcy file. And I would so stipulate . . . in the pre-trial conference, that Mr. R. Walter Graham on January the 16th, 1979, filed for bankruptcy in the United States District Court, Bankruptcy No. 79-0074K. And further, that he was duly discharged on June 12th, 1979 by that court. And further, that among the list of creditors which

---

Where more than one claim for relief is presented in an action . . . the [trial] court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order . . . which adjudicates less than all the claims shall not terminate the action as to any of the claims . . . .

The multiple claims referred to in Rule 605 a include multiple defendants. Tedrow v. Ford Motor Co., 260 Md. 142, 144, 271 A.2d 688, 689 (1970); Picking v. State Finance Corp., 257 Md. 554, 558, 263 A.2d 572, 574 (1970).

he filed in that proceeding, there does not appear the name of any plaintiff in this case.

There followed an exchange of comments in which defendants' counsel took the position that any remedies should be sought in the federal court while plaintiffs' counsel asserted that the bankruptcy case was closed and that, if Graham had failed to list the plaintiffs as creditors, he remained a debtor and was liable for any judgment which might be entered against him. The discussion ended with the following colloquy:

THE COURT: Well, if a party has filed for bankruptcy, that is a basis for a stay of any action.

[DEFENDANTS' COUNSEL]: Yes.

THE COURT: The motion is that he had filed for bankruptcy in January. But the plaintiff says that he's been discharged, and that that case is, therefore, terminated.

[DEFENDANTS' COUNSEL]: Very possible.

THE COURT: The question then is if you have a new motion that he has done more than filed, that he is —

[DEFENDANTS' COUNSEL]: I have no reason to disbelieve [plaintiffs' counsel]. I am sure he is correct.

THE COURT: Then I would have some basis to act on the matter. But right now, I can't see how I can.

[DEFENDANTS' COUNSEL]: Will I stipulate . . .? I knew there was a hearing coming up, but I didn't know when. If he has the record of discharge.

THE COURT: I will defer ruling on that motion, too, then.

The parties proceeded to trial on the merits as to all parties. No documentation with respect to the bankruptcy

proceedings of Graham, if any, was furnished. In the defendants' memorandum in support of their motion to dismiss at the end of the plaintiffs' case, argument was advanced as to why Graham should not be found liable on the merits.

Our threshold concern is whether the appeals noted in this case are allowed by law. It is an issue which this Court raises sua sponte. *Eastgate Associates v. Apper,* 276 Md. 698, 701, 350 A.2d 661, 663 (1976); *Diener Enterprises, Inc. v. Miller,* 266 Md. 551, 555, 295 A.2d 470, 473 (1972); *Picking v. State Finance Corp.,* 257 Md. 554, 556, 263 A.2d 572, 573 (1970); Md. Rule 835 a 1.

It appears to have been conceded by all parties and accepted by the court below that, at a minimum, Graham had petitioned for bankruptcy during the pendency of this litigation. Inasmuch as Graham's counsel referred only to an automatic stay, we shall limit our analysis of the problem to automatic stays and injunctions under the Bankruptcy Act and Rules, as opposed to possible special injunctions. Further, because all parties represented that Graham had filed for bankruptcy in January 1979, the Bankruptcy Act, 11 U.S.C. (1976), as opposed to the later-enacted Bankruptcy Code, governs the bankruptcy aspects of the issues at hand.[5] Under the Bankruptcy Act (the Act) and the Bankruptcy Rules, there are basically two types of stays or injunctions by operation of law which are suggested by the representations of counsel in this case. One is designed to protect the debtor in the period between the commencement of the bankruptcy proceeding and its determination. The second operates as a consequence of discharge.

If in the instant matter, as suggested by Graham's counsel at the beginning of trial, an automatic stay were in effect which prevented the plaintiffs from proceeding against Graham so long as it remained in effect, such a stay does not

---

5. The Bankruptcy Code, 11 U.S.C.A., §§ 101-151326 (1979) was enacted by Pub. L. 95-598 (the Bankruptcy Reform Act of 1978). That Act generally took effect on October 1, 1979. *See* § 402 (a). Under § 403 (a), a "case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Bankruptcy Reform] Act had not been enacted . . . ."

obviate the necessity of obtaining a Rule 605 a order making the partial adjudication as to the remainder of the parties a final judgment. On the other hand, if the facts were as additionally represented by plaintiffs' counsel, *i.e.,* that Graham had been discharged prior to the start of trial, and that the plaintiffs were unscheduled creditors who were seeking judgment in the court below against Graham notwithstanding his discharge, a Rule 605 a certification would also be required because nondischargeability for failure to schedule the plaintiffs' claims could have been determined in the trial court.

(i)

Bankruptcy Rule 401 (a), with certain exceptions not relevant here, provides that the "filing of a petition [in bankruptcy] shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt . . . ."[6] The stay under this rule is automatic. Included in such a stay is the continuation of any action on a debt which is not dischargeable under § 17 (a) (3) of the Act, relating to unscheduled debts. *See* Advisory Committee's Note to Bankruptcy Rule 401, Subdivision (a). But a stay under Bankruptcy Rule 401 (a) of a suit pending in a nonbankruptcy court against the bankrupt "is not a dismissal of the suit nor does it deprive the court of jurisdiction over the matter; it merely suspends the proceedings." *David v. Hooker, Ltd.,* 560 F.2d 412, 418 (9th Cir. 1977). *See* 1A *Collier on Bankruptcy* ¶ 11.07, at 1167 (14th ed. 1978) (hereinafter cited as *Collier*); *Hill v. Harding,* 107 U.S. 631, 633-34, 2 S. Ct. 404, 406, 27 L. Ed. 493, 494 (1883) (decided under Bankruptcy Act of 1867). Indeed, it has been held to be error for a nonbankruptcy court to dismiss a claim, as opposed to staying it, upon a suggestion of bankruptcy. *Piel v. Harvard*

---

**6.** "Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . a contract express or implied . . . ." Bankruptcy Act, § 63 (a) (4), 11 U.S.C. § 103 (a) (4) (1976).

*Interiors Manufacturing Co.,* 490 F.2d 1272 (8th Cir. 1974). An automatic stay under Bankruptcy Rule 401 (a) enables the bankrupt "to obtain relief until he can secure his discharge and thereafter assert it." *Collier* ¶ 11.02, at 1143.

Here, if the automatic stay under Bankruptcy Rule 401 (a) were in effect throughout the period from July 30, 1979, when Graham's counsel raised the issue, through April 22, 1980, when the decree below was filed, the threshold question is whether that assumed fact permits the Council, the S&L and Service Co. to appeal without obtaining an order under Rule 605 a.

The only decisions which we have found dealing with this problem in multiple defendant litigation hold that trial court certification is required. In *Knight & Co. v. Fort Belknap Indian Agency,* 612 P.2d 1290 (Mont. 1980) the plaintiff had sued five defendants. Judgments were rendered as to four defendants but no determination was made as to the fifth, Fort Belknap Builders, Inc. The plaintiff noted an appeal from the judgment in favor of one of the other defendants. The record did not reveal why no final judgment had been entered as to the fifth defendant, but the appellant's brief advised that Fort Belknap Builders, Inc. was a bankrupt and that the " 'only real parties left in the suit' " were the plaintiff and the appellee. *Id.* at 1292. This appeal was dismissed under Mont. R. Civ. P. 54 (b), a rule which is much like Fed. R. Civ. P. 54 (b) and Md. Rule 605 a. The court said (*id.*):

> Recognizing that all of the rights and liabilities of all of the parties had not been adjudicated, Knight could have attempted to obtain an entry of default judgment against Fort Belknap Builders, Inc. If this had been done, there would have been a final judgment, and consequently this case would be ripe for appellate review. However, if a bankruptcy petition has been filed in Federal Court, then Knight's action against Fort Belknap Builders, Inc. in Blaine County District Court may be stayed and Knight will not be able to obtain an entry of default

judgment or further proceed against *Fort Belknap Builders, Inc.* Under federal law, the filing of a bankruptcy petition operates so as to stay other proceedings pending a Federal Court's determination on the bankruptcy petition . . . .

If a bankruptcy petition has been filed concerning Fort Belknap Builders, Inc., then it would be proper for Knight to petition for a Rule 54 (b) certification of final judgment in order to facilitate appellate review.

*McKiever v. King & Hatch, Inc.,* 366 So. 2d 264 (Ala. 1978) applied Ala. R. Civ. P. 54 (b), that state's counterpart of Md. Rule 605 a. The plaintiff, a contractor, sued seven defendants, two of whom were named Guest, and all of whom were makers of a promissory note. Summary judgment was granted against five of the defendants, but the liability of the Guests was not adjudicated because they had petitioned in bankruptcy. The appeal was dismissed on the following rationale (*id.* at 265):

The filing of a petition for bankruptcy by a defendant does not terminate an action in state court against him. A pending suit founded upon a claim for which discharge would be a release is automatically stayed until adjudication or dismissal of the bankruptcy petition. 11 U.S.C. § 29 (a) (1976); Bankruptcy Rule 401 (a), (b). The stay may be annulled as to claims not scheduled in time for proof and allowance. Bankruptcy Rule 401 (c). The stay may be vacated by the Bankruptcy Court upon application by the creditor. Bankruptcy Rule 401 (d). Moreover, the petition may be dismissed and the stay vacated if the petitioner has obtained a discharge in bankruptcy within the past six years . . . .

The stay does not operate as a dismissal of the action . . . . There is no statute or rule authorizing dismissal of a pending claim simply because the defendant has filed for bankruptcy . . . .

There is no indication of the progress or status of the bankruptcy petition. The stay may have been, or may soon be, dissolved or vacated and the contractor will be able to pursue his claim against the Guests. Since there has been no final disposition of the rights and liabilities of two of the defendants, the order granting summary judgment as to the other five is not a final judgment and, because there has been no entry and determination under Rule 54 (b), it is not appealable.

We agree with the reasoning of the foregoing cases and hold that a stay, under Bankruptcy Rule 401 (a), of proceedings against one of multiple defendants does not thereby render appealable judgments entered on claims asserted against the remaining defendants, in the absence of a Rule 605 determination and direction.[7]

(ii)

If Graham had obtained a discharge in bankruptcy prior to commencement of the trial in this case, then § 14 (f) (2) of the Act, 11 U.S.C. § 32 (f) (2) (1976), would operate. It provides:

An order of discharge shall —

. . . .

(2) enjoin all creditors *whose debts are discharged* from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt. [Emphasis added.]

---

7. If the plaintiffs' claims were not in fact scheduled by Graham, it may be that there was no stay under Bankruptcy Rule 401 operative in July 1979, and thereafter. Bankruptcy Rule 401 (c) provides that "[a]t the expiration of 30 days after the first date set for the first meeting of creditors, the stay provided by this rule shall be deemed annulled as against any creditor whose debt has not been duly scheduled and who has not filed his claim by that time."

But the plaintiffs also asserted at the pre-trial conference that their claims had not been scheduled by Graham. Section 17 (a) (3) of the Act, 11 U.S.C. § 35 (a) (3) (1976), in relevant part, provides that a "discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (3) have not been duly scheduled in time for proof and allowance, . . . unless such creditor had notice or actual knowledge of the proceedings in bankruptcy . . . ."

The determination of the nondischargeability of a particular debt of a bankrupt who had received a discharge in proceedings commenced prior to December 19, 1970 was usually determined in a nonbankruptcy court. *See, e.g., Household Finance Corp. of Suitland v. Hamer,* 248 Md. 567, 238 A.2d 112 (1968). Amendments to the Act in 1970 by Public Law 91-467, 84 Stat. 990, *authorized* the bankruptcy court to determine the dischargeability of all types of debts of the bankrupt, and limited the determination as to some types of debts solely to the bankruptcy court. *See* § 17 (c) (1) and (2) of the Act, 11 U.S.C. § 35 (c) (1) and (2) (1976); D. Cowans, *Bankruptcy Law and Practice* § 253, at 293 (2d ed. 1978). It is sufficient for present purposes simply to note that the issue of nondischargeability based on failure to schedule is not one of the issues over which the bankruptcy court was given exclusive jurisdiction. State courts continue to have jurisdiction concurrent with the bankruptcy court to determine nondischargeability under § 17 (a) (3). *See Collier* ¶ 14.70 at 1456-57, ¶ 17.23 [9] and ¶ 17.22A, ¶ 2.62 at 349; D. Cowans, *supra,* § 254 at 304, § 278 at 362; Countryman, *The New Dischargeability Law,* 45 Am. Bankr. L. J. 1, 28-29 (1971). State court decisions on nondischargeability issues under § 17 (a) (3) of the Act include *Marburger v. Marburger,* 372 N.E.2d 1250 (Ind. App. 1978); *State Farm Mutual Automobile Insurance Co. v. Hall,* 221 Kan. 337, 559 P.2d 357 (1977); and see *Chevron Oil Co. v. Dobie,* 40 N.Y.2d 712, 389 N.Y.S.2d 819, 358 N.E.2d 502 (1976). *Cf. In re Waller,* 494 F.2d 447 (6th Cir. 1974) (reversing bankruptcy court's special injunction of state court proceeding against discharged bankrupt, in part because unscheduled debt was mature). The injunction under § 14 (f) (2) of the Act does not

prevent a creditor, who asserts that the debt owing to him from a discharged bankrupt is not reached by the discharge due to the bankrupt's failure to schedule that debt, from litigating nondischargeability in the state court. If successful on that issue, the creditor may obtain a state court judgment against the bankrupt, on the underlying debt.

In the instant matter Graham never produced the discharge as a bar to the claim which the plaintiffs continued to assert against him throughout the entire course of the proceedings below. On the other hand, the plaintiffs never produced the schedules filed by Graham which would demonstrate that their claim had not been scheduled. The status of Graham's bankruptcy seems to have been left in a factual limbo. Whether the trial court was correct or not in concluding on that state of the record that the proceedings were stayed as to Graham is not the issue which we address here. We hold simply that the injunction provided by § 14 (f) (2) of the Act does not prevent a state court from determining dischargeability under § 17 (a) (3) of the Act. If only a § 14 (f) (2) injunction is in effect here, the appeals noted by the parties do not lie without a Rule 605 a determination and direction for the entry of final judgment.

(iii)

These appeals will be dismissed. When the record is returned to the trial court, the parties presumably will seek an order under Rule 605 a. Before acting on that application the trial court should determine the status of Graham's bankruptcy and the intentions of the parties concerning it.. If the plaintiffs abandon or have abandoned their claims against Graham,[8] a judgment of dismissal should be entered as to him. If Graham makes no defense based on any discharge in bankruptcy, the question of his liability would seemingly be capable of determination by the trial court

---

8. For example, the plaintiffs may concede that they are unable to overcome a defense of discharge because, although their claims might have been unscheduled, they had timely knowledge of Graham's bankruptcy. *See* § 17 (a) (3) of the Act, 11 U.S.C. § 35 (a) (3) (1976).

on the record already made. If there is a bankruptcy stay which is then operative as to the plaintiffs' claims against Graham, and Graham has not been discharged, the trial court should then balance "the exigencies of the case . . . with the policy against piecemeal appeals and then only allow a separate appeal . . ." if this is one of "the very infrequent harsh case[s]." *Diener Enterprises, Inc. v. Miller, supra,* 266 Md. at 556, 295 A.2d at 473. Factors involved in the balancing would include the degree of likelihood that the stay will be lifted, on application to the bankruptcy court, and the extent of anticipated delay.[9] If there is no stay then in effect, other than the injunction under § 14 (f) (2) of the Act because Graham has been discharged, but if the determination of any liability of Graham requires resolving issues under § 17 (a) (3) relating to Graham's bankruptcy schedules and to the plaintiffs' knowledge of the bankruptcy, a similar balancing will be required in determining whether to issue an order under Rule 605 a.

> *Appeals dismissed.*
> *Costs to abide the final result.*

---

**9.** Were a trial court to refuse to enter an order under Rule 605 a in the face of a record clearly demonstrating that a bankruptcy stay of proceedings against one defendant will not likely be lifted for a long time, and that its duration will be so prolonged as to deprive the party applying for the order of the means of proceeding further to enforce the right of appeal, the refusal under such circumstances would constitute a final order, reviewable for an abuse of discretion. *Cf.* Concannon v. State Roads Comm'n, 230 Md. 118, 186 A.2d 220 (1962) (order denying leave to amend which, as a practical matter, determined parties' principal claim adversely to them and deprived them of the means of proceeding further to assert and enforce that claim, held to be an appealable order).