871 A.2d 545

**Reginald SMITH, Jr., et al.**

v.

**LEAD INDUSTRIES ASSOCIATION, INC., et al.**

**No. 68, Sept. Term, 2004.**

Court of Appeals of Maryland.

April 4, 2005.

**14**

Edward J. Lilly and Ronald E. Richardson (Law Offices of Peter G. Angelos, on brief), Baltimore, for petitioners.

Philip H. Curtis (William H. Voth of Arnold & Porter LLP, New York, NY; John B. Isbister of Tydings & Rosenberg LLP, Baltimore, for Atlantic Richfield Co.), for petitioners.

Paul M. Pohl (Charles H. Moellenberg, Jr., Laura E. Ellsworth of Jones Day of Pittsburgh, PA); George M. Church (F. Ford Loker of Miles & Stockbridge, P.C., Baltimore); Dale A. Normington (The Sherwin–Williams Company of Cleveland, OH), on brief, for respondents.

Andrew Gendron, Matthew T. Murname, Venable LLP, Baltimore, Michael T. Nilan, Scott A. Smith, Matthew E. Johnson, Halleland Lewis Nilan Sipkins & Johnson, Minneapolis, MN, attorneys for SCM Corporation.

Raymond G. Mullady, Jr., Orrick, Herrington & Sutcliffe, Washington, DC; Daniel J. Thomasch, Richard W. Mark, New York, NY, attorneys for American Cyanamid Company.

Peter F. Axelrad, Ronald A. Baradel, Matthew S. Evans, III, Council, Baradel, Kosmerl & Nolan, Annapolis, attorneys for The Doe Run Resources Corporation and Asarco, Inc.

Andrew Gendron, Matthew T. Murname, Venable LLP, Baltimore, Carl A. Henlein, Susan S. Wettle, Frost, Brown, Todd, Louisville, KY, attorneys for The Glidden Company.

James P. Ulwick, Kramon & Graham, Baltimore, Elizabeth L. Thompson, Andre M. Pauka, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Susan O'Sullivan McGuire, Kirkland & Ellis, Washington, DC, attorneys for NL Industries, Inc.

Robert H. Bouse, Jr., Philip C. Jacobson, Charles I. Joseph, Anderson, Coe & King, Baltimore; James R. Miller, Michael J.

Sweeney, Dickie, McCamey & Chilcote, Pittsburgh, PA, attorneys for PPG Industries, Inc.

Gerard P. Martin, T. Christine Pham, Rosenberg, Martin, Funk, Greenberg, Baltimore; Jeffrey S. Lichtman, Jonathan M. Shine, Skadden, Arps, Slate, Meagher & Flom, New York, NY, attorneys for Benjamin Moore & Company.

Deborah L. Robinson, Robinson Woolson, Baltimore; Ronald A. Dweck, Glenn M. Cooper, Paley, Rothman, Goldstein, Rosenberg & Cooper, Bethesda, attorneys for Duron, Inc.

William C. Parler, Jr., Parler & Wobber, Towson, attorneys for Valspar Corporation.

Charles S. Hirsch, Ballard Spahr Andrews & Ingersoll, Baltimore; Steven R. Williams, McGuire Woods, Richmond, VA, attorneys for E.I. du Pont de Nemours and Company.

Frank F. Daily, Cynthia Dietz Spirt, The Law Offices of Frank F. Daily, Hunt Valley, attorneys for Lasting Paints, Inc.

Victor E. Schwartz, Leah Lorber, Cary Silverman, Washington, DC, brief of the American Tort Reform Association, Chamber of Commerce of the United States, National Association of Manufacturers, American Chemistry Council, and Property Casualty Insurers Association of America as *Amici Curiae* in Support of Respondents. (Robin S. Conrad, National Chamber Litigation Center, Inc., Jan S. Amundson, Quentin Riegel, National Association of Manufacturers, Washington, DC, Ann W. Spragens, Robert J. Hurns, Property Casualty Insurers Association of America, Des Plaines, IL, Sherman Joyce, American Tort Reform Association, Washington, DC, Donald D. Evans, American Chemistry Council, Arlington, VA, Of Counsel.)

Michael T. Wharton, Michelle R. Callender, Wharton, Levin, Ehrmantraut & Klein, Annapolis, brief of *amicus curiae* Product Liability Advisory Council, Inc. in Support of Respondents. (Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, VA, Of Counsel.)

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

WILNER, J.

This is essentially a tort-based product liability case involving, among other causes of action, allegations of fraudulent and negligent misrepresentation and failure to warn of hazards associated with either the product itself or the use of the product. We granted *certiorari* to consider two principal questions: (1) whether injured minors can maintain an action for fraudulent or negligent misrepresentation when there is no direct reliance by them on the alleged misrepresentations; and (2) whether a manufacturer whose product is not itself harmful can be liable for failing to warn of hazards inherent in other products that may arise from the use of its product.[1] Because it is now clear that no final or appealable judgment exists and that the Court of Special Appeals erred in declaring otherwise, we are obliged to direct that the appeal be dismissed without addressing those issues.

## *BACKGROUND*

This is an action by seven minor plaintiffs against twenty-one defendants to recover for injuries sustained from exposure to lead contained in either paint or gasoline. The plaintiffs, who, through one or both of their respective parents, all joined in a single fifteen-count, 172–page complaint, come from four different families: there are three Smith children, one Brantley child, one Hamilton child, and two Shorter children. The defendants fall into one or more of four categories—those that produced tetraethyl lead (TeL), a gasoline additive that reduces knock in internal combustion engines; those that produced lead pigment used in manufacturing paint; paint manu-

---

1. A third issue was also included in the petition for *certiorari*—whether the petitioners properly appealed the dismissal of their Consumer Protection Act count. The Court of Special Appeals held that they had not done so.

facturers which either produced paint containing that pigment (lead paint) or which did not produce lead paint but failed to provide warnings regarding the safe removal of lead paint in their surface preparation instructions; and two trade organizations charged with promoting the use and unsafe removal of lead paint.

The action was filed in the Circuit Court for Baltimore City. Early in the proceeding, the plaintiffs moved to sever the action into four separate cases, one for each family, or, in the alternative, to allow them to dismiss the action without prejudice in order that separate actions could be brought. The court denied that relief. Instead, it treated the motion as one for separate trials pursuant to Maryland Rule 2–503(b) and granted that relief. In a subsequent pre-trial scheduling order, the court set four separate trial dates—one for the Smith children, one for the Brantley child, one for the Hamilton child, and one for the Shorter children—and established different discovery schedules with respect to the quadrifurcated claims. Although that scheduling order was amended from time to time, the question of severance was never revisited, and the case proceeded in accordance with the ruling denying the motion for severance but granting separate trials on a per family basis. The effect of the court's ruling was to maintain the action as a unitary one, involving all plaintiffs against all defendants. *See Blades v. Woods,* 338 Md. 475, 659 A.2d 872 (1995). No complaint has been made in this appeal about the validity or propriety of that ruling.

The case then proceeded with a blizzard of motions to dismiss and for summary judgment, which ultimately were granted, in whole or in part. In August, 2001, the court denied a motion by Duron, Inc. to dismiss Count I of the Third Amended Complaint but "reassigned" Counts I, II, and III (Conspiracy, Concert of Action, and Aiding and Abetting) as part of the descriptive "Nature of the Action" appearing in preliminary paragraphs. The effect of that order was to dismiss those counts as substantive causes of action at least as

18

to Duron.[2]

On October 24, 2001, the court granted a motion for summary judgment in favor of Lasting Paints, Inc. "against the Plaintiffs." The order granting the motion (1) is not in the record, although a copy was included in the record extract, and (2) was never docketed in this action.[3] It appears to apply to the six plaintiffs then in the case. One child, Shatavia Smith, did not join the case as a plaintiff until a month later, and the order was never extended to include her. A motion by the plaintiffs to reconsider the granting of Lasting Paints' motion was denied.

The next day, October 25, 2001, the court granted a motion for partial summary judgment in favor of American Cyanamid Company. That company was sued in two capacities—for its own conduct and as a successor-in-interest to John R. MacGregor Lead Company. The motion and the order granting it addressed only the successor-in-interest liability, which is why it was labeled a partial summary judgment. As with the grant of Lasting Paints' motion, it went against only the six plaintiffs then in the case, not Shatavia Smith, who was added a month later.

---

**2.** The court issued its order in response to Duron's Motion to Dismiss Count I of the Third Amended Complaint, in which no other defendants had joined. In its Memorandum and Order, the court stated that it would interpret Counts I and III as having been set forth in the "Nature of the Action" section of the Third Amended Complaint "for any future proceedings pertaining to this cause of action." Although this language suggests that the court intended its order to apply as to all plaintiffs and defendants in the action, the effect of its ruling is an open question, since the court never entered a separate order to that effect. Later, in its February 14, 2002 Memorandum Opinion and Order, the court stated that Count II had also been reassigned to the "Nature of the Action" section of the Third Amended Complaint. Thus, the court believed that it had reassigned all three counts as to all plaintiffs and defendants.

**3.** The caption of the order, as it appears in the record extract, indicates that it was entered in both this case and another, *Joan E. Young v. Lead Industries Association, Inc.*, No. 24–C–99–004491, 1999 WL 33756951. Perhaps the order was included and docketed in that action, but it is not included or docketed in this one.

In February, 2002, the court dismissed (1) Counts IV through XV against PPG Industries, Inc. (PPG), E.I. DuPont de Nemours & Company (DuPont), and Ethyl Corporation with respect to the TeL claims made against them, (2) those same counts against Atlantic Richfield Company (Atlantic Richfield), NL Industries, Inc. (NL), SCM Corporation (SCM), Glidden Corporation (Glidden), The Sherwin–Williams Company (Sherwin–Williams), American Cyanamid Company (American Cyanamid), and Fuller–O'Brien Corporation (Fuller–O'Brien) with respect to the lead pigment claims made against them, (3) those counts generally against National Paint and Coatings Association (NPCA) one of the two trade associations, (4) Counts V, VIII, and XI through XV against Lead Industries Association, Inc. (LIA), the other trade association, and (5) Counts XI through XIV—the fraud counts— against all defendants. A week later, the court dismissed all remaining counts as to Atlantic Richfield and American Cyanamid and all counts as to ASARCO, Inc. and Doe Run Resources.

That left Counts IV through X and XV (Alternative Liability, Negligent Product Design, Negligent Failure to Warn, Supplier Negligence, Strict Liability/Defective Design, Strict Liability/Failure to Warn, Commercial Seller Liability, and Consumer Protection Act) alive against ten paint manufacturing defendants (Sherwin–Williams, SCM, Glidden, DuPont, Fuller–O'Brien, PPG, Valspar Corporation, Benjamin Moore & Company, and Duron, Inc.) and Counts IV, VI, VII, IX, and X alive against LIA.

On November 15, 2002, the court granted summary judgment on Counts IV through X and XV in favor of all defendants except Fuller–O'Brien and LIA, but only as to the Smith plaintiffs.[4] On November 21, it granted summary judgment to

---

4. The motion for summary judgment filed by those defendants asked that the court grant judgment in their favor "as to all claims asserted on behalf of Plaintiffs Reginald Smith, Jr., Shatara Smith, and Shatavia Smith (the 'Smith Plaintiffs') based upon the Smith Plaintiffs' failure to identify the manufacturer or seller of the product allegedly causing

Fuller–O'Brien on those counts, but, as Fuller–O'Brien's motion went to "all plaintiffs," presumably the judgment did as well. That was the last order entered by the Circuit Court. On December 10, 2002, all of the plaintiffs filed an appeal "from all appealable Orders, including but not limited to the final judgments entered on November 15, 2002."

The Court of Special Appeals, in an unreported opinion, recognized that there was no final judgment in the case in that many of the counts against many of the defendants were still unresolved with respect to the Brantley, Hamilton, and Shorter plaintiffs. It assumed, however, that all claims against all defendants had been finally resolved with respect to the Smith children, and concluded, as a result, that "to condition the Smith appeal upon the entry of final judgment in the claims brought by the other plaintiffs would be inefficient, at best, and possibly foolish." That was so, it said, because the facts for each family of plaintiffs were different and because a decision in the Smith appeal might clarify issues that remain in the other cases. On that ground, the intermediate appellate court, invoking Maryland Rule 8–602(e)(1)(C), purported to enter final judgment on the Smith claims and proceeded to address the substantive issues presented in the appeal.

The Court of Special Appeals affirmed the trial court's grant of summary judgment with respect to the fraud, negligent misrepresentation, and intentional concealment claims on the ground that the plaintiffs failed to produce sufficient evidence of reliance on their part, which the appellate court held was necessary to establish liability. The court also agreed that the manufacturers of non-lead-based paint had no duty to warn the plaintiffs of the hazards associated with the removal of lead paint, not made by them, when preparing the surface for repainting. The court found no duty owing to the plaintiffs by the two trade associations. The one area in which the appellate court disagreed with the trial court concerned the liability of the defendants that produced lead pigment and

---

them injury." The court's order granted the "Defendants' Motions for Summary Judgment."

lead paint—claims of alternative liability, negligent product design, supplier negligence, strict liability for defective design, and liability of commercial sellers for harm caused by products into which harmful components are integrated. Judgments with respect to those claims against those defendants were reversed and the case was remanded for further proceedings.[5]

## DISCUSSION

In *Shoemaker v. Smith*, 353 Md. 143, 165, 725 A.2d 549, 560 (1999), we confirmed the long-standing rule that "[t]he right to seek appellate review ordinarily must await the entry of a final judgment, disposing of all claims against all parties," and that there were only three exceptions to that rule: appeals from interlocutory rulings specifically allowed by statute (Maryland Code, § 12–303 of the Cts. & Jud. Proc. Article), immediate appeals permitted under Maryland Rule 2–602(b), and appeals from interlocutory rulings allowed under the common law collateral order doctrine. *See also Frase v. Barnhart*, 379 Md. 100, 109–10, 840 A.2d 114, 119 (2003). In *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989), we held that:

> "If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601."

*See also Walk v. Hartford Casualty*, 382 Md. 1, 10–11, n. 4, 852 A.2d 98, 103–04, n. 4 (2004); *Jones v. Hubbard*, 356 Md. 513, 524, 740 A.2d 1004, 1010 (1999); *Board of Liquor v. Fells Point Cafe*, 344 Md. 120, 129, 685 A.2d 772, 776 (1996).

Clearly, as the Court of Special Appeals recognized, the various orders entered by the Circuit Court in this case do not constitute, or even come close to constituting, a final judgment

---

**5.** The Court of Special Appeals did not consider the lower court's grant of summary judgment as to Count XV, holding that "its dismissal [was] not appealed by plaintiffs."

under the criteria stated in *Rohrbeck.* Most of the claims pled by the Brantley, Hamilton, and Shorter plaintiffs are unresolved, and, indeed, as we shall explain, some of the claims pled by the Smith plaintiffs appear also to be unresolved. Nor are any of the trial court's rulings appealable under the collateral order doctrine or under Maryland Code, § 12–303 of the Cts. & Jud. Proc. Article. If they are appealable at this time, it can only be pursuant to Maryland Rule 2–602(b).

Rule 2–602(a) provides generally that an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action, less than an entire claim, or the rights and liabilities of fewer than all the parties to the action (1) is not a final judgment, (2) does not terminate the action as to *any* of the claims or *any* of the parties, and (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties. Section (b) of the Rule permits the Circuit Court, if it expressly determines in a written order that there is no just reason for delay, to direct in the order the entry of a final judgment as to one or more but fewer than all of the claims or parties or for some but less than all of the amount requested in a claim seeking only money relief. The Circuit Court made no such determination and entered no such order. The appeal was therefore one that is not allowed by law and should have been dismissed.

Maryland Rule 8–602(e)(1) permits this Court or the Court of Special Appeals, if it concludes that an order from which the appeal was taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), to dismiss the appeal, to remand the case for the lower court to decide whether to enter a final judgment under Rule 2–602(b), or to enter a final judgment on its own initiative. If it chooses the latter option, the Rule directs that it treat the notice of appeal as if filed on the date it enters the judgment and proceed with the appeal.

In this case, as noted, the Court of Special Appeals chose that third option, believing that it would be inefficient and

possibly "foolish" to do otherwise. We disagree. There are so many loose ends left in the Circuit Court that, to proceed with this appeal now would be to do what we, and the Court of Special Appeals, have consistently held ought not to be done. Neither efficiency nor the avoidance of "foolishness" is served.

As we have indicated, the appellate court implicitly assumed that all claims by the Smith plaintiffs had been resolved against all of the defendants. That does not appear to be the case. Although LIA and perhaps the other parties thought otherwise, the record indicates that, when LIA filed for bankruptcy on April 4, 2002, Counts IV, VI, VII, IX, and X were still open against it, and, because of the bankruptcy stay, those claims, by the Smith plaintiffs, have yet to be resolved.[6] *See Starfish Condo. v. Yorkridge Serv.*, 292 Md. 557, 565–66, 440 A.2d 373, 378 (1982). If that is so, as it appears to be, the trial court could not have entered a final judgment under Rule 2–602(b) unless it severed LIA as a defendant because, given the nature of the allegations against LIA, that would have amounted to splitting a single claim, which is not allowed.

As the trial court noted in its memorandum of February 14, 2002, the complaint against the trade associations was that (1)

---

**6.** The record before us shows that on November 13, 2000, LIA and NPCA—the two trade associations—filed motions to dismiss Counts V, VIII, and XI–XV (product design, fraud, and Consumer Protection Act). The next day, LIA and NPCA filed a supplemental memorandum in support of their motion to dismiss those counts. On November 21, NPCA, but not LIA, filed a memorandum in support of a motion to dismiss Counts II, IV, and V–XIV, although it did not actually file a motion to dismiss those counts until February 12, 2001. On February 14, 2002, the court entered an order "that the Motion[s] to Dismiss of Defendant Lead Industries Association and National Paint and Coating Association are granted." The order did not specify which counts were dismissed, although, in an accompanying memorandum, it seemed to assume that the motion went to the entire Third Amended Complaint. In NPCA's case, it effectively did, but in LIA's case, it did not. In an opposition to the plaintiffs' motion for reconsideration, LIA also assumed that the dismissal went to the entire Third Amended Complaint. The problem is that the only motion to dismiss applicable to the Third Amended Complaint that we can find in the record on behalf of LIA went only to Counts V, VIII, and XI–XV.

they were charged with the responsibility of establishing standards in order to require that the products manufactured and sold by their members were safe, (2) they permitted officers of companies who had knowledge of the dangers of lead to form their policies, and (3) they acted as agents for the other defendants in committing the intentional torts and were equally liable. Those allegations served as the basis for the liability asserted against LIA in all of the counts in the Third Amended Complaint, and thus all of those counts, under our case law, constituted a single claim. *See Biro v. Schombert,* 285 Md. 290, 402 A.2d 71 (1979); *East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982); *Medical Mutual v. Evander,* 331 Md. 301, 309–13, 628 A.2d 170, 174–76 (1993) and cases cited there; *Huber v. Nationwide,* 347 Md. 415, 701 A.2d 415 (1997). Because they constituted a single claim, the trial court could not have entered a final judgment under Rule 2–602(b) with respect to LIA or any other defendant or plaintiff unless it severed LIA entirely, and, if the trial court had no authority to enter such a judgment, neither did the Court of Special Appeals under Rule 8–602(e).

Apart from that problem, the order of October 24, 2001 granting summary judgment in favor of Lasting Paints against "the Plaintiffs" (1) was never docketed in this action and could not achieve the status of a judgment until it is so docketed, and (2) did not include Shatavia Smith, who was not yet a party. The summary judgment was never extended to include her after her intervention the following month. That is true as well with the partial summary judgment entered in favor of American Cyanamid on October 25, 2001; that, too, did not include Shatavia Smith.

Beyond the open issues regarding the Smith plaintiffs, we made quite clear in *Diener Enterprises v. Miller,* 266 Md. 551, 295 A.2d 470 (1972), that discretion to enter judgment under what is now Rule 2–602(b) was to be reserved for the "very infrequent harsh case." *Id.* at 556, 295 A.2d at 473. The appellate court retains the authority, in reviewing the exercise of that discretion, to "determine if there is anything in the record which establishes the existence of any hardship or

unfairness which would justify discretionary departure from the usual rule establishing the time for appeal." *Id.* at 555, 295 A.2d at 473. The limited nature of the discretion accorded under Rule 2–602(b) has been confirmed by us on several occasions. *See Planning Board v. Mortimer,* 310 Md. 639, 648, 530 A.2d 1237, 1242 (1987), quoting *Diener Enterprises v. Miller, supra* ("The exercise of discretion is reviewable and should not be routinely exercised. A separate appeal under Rule 2–602 should be allowed 'only . . . in the very infrequent harsh case.' "); *Wilde v. Swanson,* 314 Md. 80, 87, 548 A.2d 837, 840 (1988) (same); *Starfish Condo. v. Yorkridge Serv.,* 292 Md. 557, 569, 440 A.2d 373, 380 (1982); *Pappas v. Pappas,* 287 Md. 455, 464, 413 A.2d 549, 553 (1980); *Taha v. Southern,* 367 Md. 564, 790 A.2d 11 (2002).

The Court of Special Appeals has traditionally been in lock-step with this approach and has not hesitated to countermand the entry of judgment under Rule 2–602(b) and dismiss an appeal upon a finding that the trial court had not articulated a sufficient reason why there was no just reason for delay, sufficient to allow an immediate appeal. *See Canterbury Rid. Condo. v. Chesapeake Inv.,* 66 Md.App. 635, 505 A.2d 858 (1986); *Allstate Ins. Co. v. Angeletti,* 71 Md.App. 210, 524 A.2d 798 (1987); *Carl Messenger Service v. Jones,* 72 Md.App. 1, 527 A.2d 763 (1987); *Tharp v. Disabled Vets.,* 121 Md.App. 548, 710 A.2d 378 (1998); *Murphy v. Steele,* 144 Md.App. 384, 798 A.2d 1149 (2002).

The purpose of Rule 2–602(a) is to prevent piecemeal appeals, which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems. The appellate court may be faced with having the same issues presented to it multiple times; the parties may be forced to assemble records, file briefs and record extracts, and prepare and appear for oral argument on multiple occasions; resolution of the claims remaining in the trial court may be delayed while the partial appeal proceeds, to the detriment of one or more parties and the orderly operation of the trial court; and partial rulings by the appellate court may do more to confuse

than clarify the unresolved issues. That is precisely why Rule 2–602(b) is reserved for the "infrequent harsh case," and why the trial judge, who normally has a much better grasp of the situation than an appellate court, is viewed, at least in the first instance, as the "dispatcher." *See Planning Board v. Mortimer, supra*, 310 Md. at 647, 530 A.2d at 1241; *Wilde v. Swanson, supra*, 314 Md. at 87, 548 A.2d at 840.

Although Rule 8–602(e) permits an appellate court to enter a judgment if the trial court could properly have done so under Rule 2–602(b), its discretion is even more limited than that of the trial judge. As we made clear in *Brown v. Gress*, 378 Md. 667, 681, 838 A.2d 362, 370 (2003), the appellate court may *not* enter judgment on its own initiative if the trial judge has refused to do so. It may not substitute its judgment for that of the trial court in that setting, and, although it has authority to act under Rule 8–602(e), it should be reluctant to do so when, as here, the trial court was never asked to act under Rule 2–602(b). If a party believes that the circumstances warrant an immediate appeal, the request should ordinarily be presented first to the trial court—the preferred "dispatcher"—for consideration. That court not only has greater knowledge than an appellate court regarding the overall effect of an immediate appeal but a greater interest in whether the case remaining before it should be "put on ice" while an interlocutory appeal proceeds. Except in the most extraordinary circumstance, predominantly where the problem of an open claim is a more or less technical one that was overlooked by the appellant when the appeal was noted and which, if spotted then, would likely have been corrected, the trial court should not be by-passed in this regard, as was deliberately done in this case.

This is not a case in which the lack of a final judgment was not apparent when the appeal was taken, where a "2–602 problem" surfaced after the appeal was noted, and where it seems clear that, if the matter had been presented to the trial court, that court likely would have acted under Rule 2–602(b). The plaintiff-appellants, which included *all* of the plaintiffs, not

just the Smith plaintiffs, had to be fully aware when they noted the appeal that no final judgment existed and that no appeal could possibly lie under either Cts. & Jud. Proc. Art. § 12–303 or under the collateral order doctrine. The "2–602 problem" was obvious before the appeal was noted, and, given all of the issues that remain unresolved, it is not at all clear that the trial court would have given favorable consideration to a request to enter judgment under Rule 2–602(b).

The decision of the Court of Special Appeals to enter judgment under Rule 8–602(e) avoided neither inefficiency nor foolishness. Quite the contrary. By entering judgment on its own initiative and entertaining the appeal, the court delayed resolution of the claims of the other plaintiffs in the Circuit Court for more than a year,[7] made more uncertain the status of Lasting Paints and American Cyanamid with respect to Shatavia Smith, made equally uncertain the status of possibly unresolved claims against LIA, set the stage for at least one additional appeal, and, if the case proceeds family by family in the Circuit Court and an immediate appeal will be permitted as to each, set the stage for perhaps three additional appeals. The Court of Special Appeals abused its discretion in entering the judgment.

**JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS APPEAL; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

---

7. The appeal was noted on December 10, 2002. The Court of Special Appeals mandate issued June 23, 2004.