938 A.2d 855

**Donna SILBERSACK, Personal Representative of the Estate of Dominic Casino, et al.**

v.

**ACANDS, INC., et al.**

**No. 53, Sept. Term, 2007.**

Court of Appeals of Maryland.

Jan. 4, 2008.

R. Bruce McElhone (Theodore M. Flerlage, Jr., James S. Zavakos of Law Offices of Peter G. Angelos, P.C., Baltimore), on brief, for appellants.

James K. Archibald (Venable, L.L.P., Baltimore; Robert C. Heim, Ezra D. Rosenberg, Louise E. Moyer, Philadelphia, PA., of counsel), on brief, for Phillip Morris USA, Inc., appellee.

David B. Hamilton (Womble Carlyle Sandridge & Rice, PLLC, Linthicum; R. Dal Burton of Womble Carlyle Sandridge & Rice, PLLC, Atlanta, GA, of counsel), on brief, for R.J. Reynolds Tobacco Co. and Brown & Williamson Holdings, Inc., f/k/a Brown & Williamson Tobacco Corp., Individually

and as Successor in Interest to the American Tobacco Co., appellees.

Kathleen McDonald, Kerr McDonald, LLP, Baltimore; Michael B. Minton, Bruce D. Ryder (Thompson Coburn, LLP, St. Louis, MO, of counsel), for Lorillard Tobacco Co., appellee.

David W. Skeen (Wright, Constable & Skeen, LLP, Baltimore; Aaron H. Marks, Kasowitz, Benson, Torres & Friedman, LLP, New York City, of counsel), on brief, for Liggett Group, Inc., appellee.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, JJ., and ALAN M. WILNER and DALE R. CATHELL (Retired, Specially Assigned), JJ.

ALAN M. WILNER, Judge (Retired, Specially Assigned).

This case has a complex history, but the issue before us is a simple one. No final judgment, as we have consistently defined that term, has been entered in the case by the Circuit Court. There are still claims pending against nine defendants who are in bankruptcy. Appellants asked the court to enter a judgment, under Maryland Rules 2–601 and 2–602(b), and the court declined to do so. Appellants acknowledge that such a decision is both a discretionary and interlocutory one and that no appeal ordinarily lies from it. Their case, they believe, calls for a different result. They insist that, in their case, the court's refusal to exercise its discretion in their favor constitutes a final judgment. We disagree and shall dismiss their appeal.

## BACKGROUND

This case began as, and remains, an action for wrongful death and personal injuries suffered by Dominic Casino as the result of his workplace exposure to asbestos products allegedly manufactured or supplied by the defendants. Mr. Casino was diagnosed with lung cancer in November, 1994; he died from that disease in February, 1995. In March, 1997, Mr. Casino's widow and the personal representative of his Estate,

appellants, filed their initial complaint against nineteen defendants in the Circuit Court for Baltimore City.[1] For nearly five years, the action was pursued as an asbestos case. Then, in December, 2001, appellants filed an amended complaint which added seven new defendants—six manufacturers and sellers of tobacco products and an alleged public relations and lobbying "arm" of the six manufacturers.[2] The amended complaint is quite lengthy. The thrust of it is that, although smoking and exposure to asbestos can each, independently, cause lung cancer, the combination of the two act in "synergy" and greatly heighten the risk of developing that disease, so that both the asbestos defendants and the tobacco defendants, separately and in combination, are responsible for the illness and death of Mr. Casino.

The tobacco defendants moved to dismiss the amended complaint against them on the ground that, because the personal injury claims against the two sets of defendants involved different products, different methods of distribution, and different uses, the joinder of asbestos and tobacco defendants was improper. In April, 2002, the court granted those

---

1. In accordance with procedures established by the court for asbestos cases filed by appellants' counsel, the complaint referenced, but did not repeat, the allegations in counsel's Bethlehem Steel Cases Master Complaint, so there are no factual averments in the complaint regarding the time, circumstances, or effect of Mr. Casino's exposure to asbestos products or the nature of the products. The Master Complaint is not in the record before us, but, from the allegations contained in the amended complaint and from our experience in dozens of other asbestos cases, we may fairly infer that, when coupled with that Master Complaint, the complaint in this case alleged that Mr. Casino's lung cancer and ultimate death were caused by his exposure, as an employee of Bethlehem Steel Corporation, to asbestos products that had been manufactured, supplied, or installed by the defendants.

2. In May, 1996, about ten months before filing this action, the law firm representing appellants in this case filed a separate, independent class action suit against manufacturers and distributors of tobacco products to recover for personal injuries, disease, and nicotine addiction caused by smoking cigarettes or using smokeless tobacco products. In May, 2000, this Court concluded that that action could not proceed as a class action, and, through the issuance of an extraordinary writ of mandamus, directed the Circuit Court to vacate its order of class certification. *See Philip Morris v. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000).

motions. It agreed that the claims involved different products, methods of distribution, and uses and concluded that the joinder of asbestos and tobacco defendants (1) would not achieve the goals of joinder—a just, speedy, and inexpensive determination of all disputes between the parties, but (2) would, instead, "disrupt the orderly procedures that the asbestos docket now has in place" and cause confusion to the jury because "a unique set of practices and procedures have developed under the asbestos docket" which the court believed would be prejudicial to the tobacco defendants if they were then added to the case. Aggrieved by that ruling, appellants sought a writ of mandamus from this Court directing the trial judge to vacate the orders of dismissal or, in the alternative, directing her to enter an order of final judgment pursuant to Rule 2–602(b), which would enable appellants to appeal that decision. We denied the petition. *Allen v. The Honorable M. Brooke Murdoch,* Misc. No. 11, Sept. Term 2002.

In July, 2005, in accordance with the court's procedures relating to its asbestos docket, this case was consolidated for trial in March, 2006, along with ten other lung cancer asbestos cases. By the time of trial, nine of the defendants had filed for bankruptcy, thereby automatically staying further proceedings against them (*see* 11 U.S.C. § 362), and appellants had either dismissed or resolved their claims against the other defendants. In April, 2006, appellants moved to "reinstate" the tobacco defendants. Noting that, by reason of the bankruptcy of some of the asbestos defendants and full resolution of appellants' claims against the others, they argued that "[t]his case is now in a position to proceed against the Cigarette Defendants, since all claims that could be resolved against the Asbestos Defendants in these proceedings have now been fully resolved." In January, 2007, the court denied that motion.

Upon that denial, appellants moved for the entry of final judgment pursuant to either Rule 2–601 or Rule 2–602(b). The avowed purpose of the motion was to permit appellants to appeal from the court's denial of their effort to join and proceed against the tobacco defendants in the asbestos case.

Because there remained in the case nine asbestos defendants in bankruptcy, against whom they could not then proceed but whom they did not choose, on their own, to dismiss, they recognized that "[a]s of this date, a final judgment pursuant to Rule 2–601 and consistent with the requirements of Rule 2–602 has not been entered," thereby precluding immediate appellate review.

To deal with that problem, they sought alternative relief. First, they asked the court to "administratively" dismiss the asbestos defendants in bankruptcy, subject to their being "reinstated" upon their emergence from bankruptcy, on the theory that, if administratively dismissed in that manner, they would no longer be in the case and final judgment could be entered. Second, they moved that the court declare, pursuant to Rule 2–602(b), that there was no just reason for delay and enter a final judgment as to all of the other (non-bankrupt) defendants. The court denied that motion as well, and appellants have brought this appeal from that denial.

## DISCUSSION

To set the context, there is a long-standing bedrock rule of appellate jurisdiction, practice, and procedure that, unless otherwise provided by law, the right to seek appellate review in this Court or the Court of Special Appeals ordinarily must await the entry of a final judgment that disposes of all claims against all parties. *See Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549, 560 (1999); *Smith v. Lead,* 386 Md. 12, 21, 871 A.2d 545, 550 (2005); *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989). Rule 2–602(a), subject to an exception provided for in section (b) of that Rule, makes clear that an order or decision "that adjudicates fewer than all of the claims in an action ... or that adjudicates the rights and liabilities of fewer than all of the parties to the action: (1) is not a final judgment; (2) does not terminate the action as to any of the claims or any of the parties; and (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties." That includes a party in bankruptcy, notwithstanding that,

unless the Bankruptcy Court lifts any stay that it has entered or that is imposed by operation of law pursuant to 11 U.S.C. § 362(a), the court is precluded from proceeding further against the party. *See Starfish Condo. v. Yorkridge Serv.,* 292 Md. 557, 440 A.2d 373 (1982).

■ Rule 2–602(b) provides a limited exception. It allows the Circuit Court to order the entry of a judgment as to fewer than all of the claims or parties if the court expressly determines in a written order that "there is no just reason for delay." For more than three decades, however, we have made clear that the discretion to enter judgment under Rule 2–602(b), or its predecessor Rule 605a., was to be reserved for the "very infrequent harsh case." [3] *Diener Enterprises v. Miller,* 266 Md. 551, 556, 295 A.2d 470, 473 (1972). We pointed out in *Smith v. Lead, supra,* 386 Md. 12, 25, 871 A.2d 545, 553 that the purpose of Rule 2–602(a) is to prevent piecemeal appeals "which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems." We noted, among other things, that piecemeal appeals may cause the appellate court to be faced with having the same issues presented multiple times and may burden the parties with having to assemble records, file briefs and record extracts, and prepare and appear for oral argument on multiple occasions. That is "precisely why," we said, "Rule 2–602(b) is reserved for the 'infrequent harsh case,' and why the trial judge, who normally has a much better grasp of the situation than an appellate court, is viewed, at least in the first instance, as the 'dispatcher.'" *Id.* at 26, 871 A.2d at 553.[4]

The great majority of cases in which this Court or the Court of Special Appeals has been called upon to consider discretion-

---

**3.** Because cases construing former Rule 605a. are relevant and precedential, we shall regard them as applying to Rule 2–602(b) and avoid specific reference to the former Rule.

**4.** Conversely, but also supporting that view is the fact that, when the case is all over, the party previously upset at one or more interlocutory rulings may have prevailed, thereby eliminating the need for, or ability to, appeal.

ary rulings under Rule 2–602(b) have involved situations in which the Circuit Court has entered a final judgment under that Rule, and, as we pointed out in *Smith v. Lead, supra,* 386 Md. at 25, 871 A.2d at 552, both courts have consistently emphasized the limited nature of the trial court's discretion to do that, and have "not hesitated to countermand the entry of judgment under Rule 2–602(b) and dismiss an appeal upon a finding that the trial court had not articulated a sufficient reason why there was no just reason for delay, sufficient to allow an immediate appeal." A string citation documenting that statement is unnecessary.

In *Brown v. Gress,* 378 Md. 667, 838 A.2d 362 (2003), we examined the converse situation. There, as here, suit was filed in the Circuit Court for Baltimore City for personal injuries and wrongful death due to workplace exposure to asbestos products. Indeed, counsel in this case also filed that action. For at least four years (and upwards of ten years with respect to some of the parties), the action proceeded as an asbestos case. As was done here, in 2001, following our ruling in *Philip Morris v. Angeletti, supra,* 358 Md. 689, 752 A.2d 200, an amended complaint was filed which added several tobacco defendants and charged that smoking and exposure to asbestos acted in "synergy" to multiply the risk of contracting lung cancer. As here, the court found the joinder impermissible and dismissed the tobacco defendants. As here, the plaintiffs asked the court to enter judgment under Rule 2–602(b), so they could immediately appeal that ruling, and the court refused. As here, notwithstanding the absence of a final judgment, the plaintiffs appealed.

Recognizing the jurisdictional problem arising from the lack of a final judgment, the *Gress* plaintiffs asked the Court of Special Appeals to enter a final judgment itself under Maryland Rule 8–602(e), so that the appeal could proceed. That Rule provides, in relevant part, that

"If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant

to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment."

In the belief that joinder of asbestos and tobacco defendants was appropriate, the Court of Special Appeals, acting under Rule 8–602(e)(1)(C), did what the Circuit Court had refused to do. It entered a final judgment, vacated the order dismissing the tobacco defendants, and remanded the case for further proceedings. *Gress v. ACandS*, 150 Md.App. 369, 820 A.2d 616 (2003).

We reversed that judgment and remanded the case to the Court of Special Appeals with instructions to dismiss the appeal. *Brown v. Gress, supra,* 378 Md. 667, 838 A.2d 362. Our reasoning was clear and precise—that the appellate court's authority under Rule 8–602(e)(1)(C) to enter judgment on its own initiative may be exercised only when the circuit court has never exercised its own discretion in the matter and *not* when the trial court was asked to enter judgment under Rule 2–602(b) and expressly declined to do so:

"We hold that where a trial court has been invited to direct entry of a final judgment in a case in which that trial court has discretion to do so and that trial court expressly declines to do so, and the merits of that ruling is not appealed, Rule 8–602(e)(1)(C) does not authorize an appellate court nevertheless to enter final judgment on its own initiative."

*Id.* at 682, 838 A.2d at 371.

Appellants' premise that an appeal lies from a circuit court's denial of a request to enter judgment under Rule 2–602(b) hinges on two footnotes, one in *Starfish Condo. v. Yorkridge Serv., supra,* 292 Md. 557, 569, n. 9, 440 A.2d 373, 380, n. 9, and the other in *Brown v. Gress, supra,* 378 Md. at 682, n. 8, 838 A.2d at 371, n. 8. *Starfish Condo.* involved consolidated breach of warranty claims by the Council of Unit Owners and

several individual unit owners in a condominium against a number of defendants. The claims were adjudicated against all defendants save one, who allegedly was in bankruptcy. No request was made of the court to enter judgment under then Rule 605 a. Even in the absence of such a judgment, cross-appeals were noted.

The actual status of the one defendant was not clear, but, on the assumption that he was, in fact, in bankruptcy and that the automatic stay now provided for under 11 U.S.C. § 362(a) was in force, we held that there was no appealable judgment and dismissed the appeals. In doing so, we observed that, when the case returned to the Circuit Court, the parties would presumably request the entry of judgment under the Rule. If they did so, we added, the court first would have to determine the status of the one defendant, and, if a bankruptcy stay was in effect, the court would then have to "balance 'the exigencies of the case . . . with the policy against piecemeal appeals and then only allow a separate appeal . . . ' if this is one of 'the very infrequent harsh case(s).' " *Starfish Condo.*, 292 Md. at 569, 440 A.2d at 380 (quoting from *Diener Enterprises, Inc. v. Miller, supra,* 266 Md. at 556, 295 A.2d at 473). Factors involved in the balancing, we stated, "would include the degree of likelihood that the stay will be lifted, on application to the bankruptcy court, and the extent of anticipated delay." *Starfish Condo.*

As a footnote to that last statement, we said:

"Were a trial court to refuse to enter an order under Rule 605a. in the face of a record clearly demonstrating that a bankruptcy stay of proceedings against one defendant will not likely be lifted for a long time, and that its duration will be so prolonged as to deprive the party applying for the order of the means of proceeding further to enforce the right of appeal, the refusal under such circumstances would constitute a final order, reviewable for an abuse of discretion."

*Id.* at 569, n. 9, 440 A.2d at 380, n. 9.

As indicated, in *Brown v. Gress, supra,* 378 Md. 667, 838 A.2d 362, we held that, where the circuit court expressly

declined to enter a final judgment under Rule 2–602(b), the appellate court has no authority to enter such a judgment under Rule 8–602(e). We noted in *Brown* that the appellants had not appealed from the trial court's denial of their Rule 2–602(b) request but merely asked the Court of Special Appeals to enter a judgment on its own initiative. In expressing our holding that the appellate court was without authority to do so, we observed, in n. 8, that the defendants "would have us go further and hold that a ruling refusing to direct the entry of a final judgment is not appealable." *Id.* at 682, 838 A.2d at 371. We responded that "[w]e have not gone so far and decline to do so in this case," pointing out that, in *Planning Board v. Mortimer,* 310 Md. 639, 647, 530 A.2d 1237, 1242 (1987), we held "albeit arguably in the context of the directing of the entry of final judgment, that the exercise of the trial court's discretion as the 'dispatcher' of final orders . . . is reviewable." [5]

Notwithstanding those footnote statements, which were neither part of nor essential to the holdings in the respective cases and therefore constitute mere *obiter dicta,* we are not aware of any occasion on which this Court has ever entertained an appeal from the express denial of a request to enter final judgment under Rule 2–602(b), and none has been cited to us. Nonetheless, we are not inclined in this case to disavow those statements or to close the door entirely on the prospect of entertaining an appeal to consider whether a trial court has abused its discretion when denying a request for entry of judgment under Rule 2–602(b).

If we were to consider such a prospect, however, we would need to start with three very basic precepts. The first is that, unless authorized by statute (*see* Maryland Code, § 12–303 of the Cts. & Jud. Proc. Article, for example), the collateral order doctrine, or pursuant to Rule 2–602(b), appeals from orders or

---

**5.** *Planning Board* involved two appeals that had been consolidated. In one, the trial court purported to enter judgment under Rule 2–602 with respect to an order that was not eligible for that treatment under the Rule. In the other, it had declined to enter such a judgment.

decisions that do not resolve or complete the resolution of the entire case, and are therefore interlocutory in nature, are not only not *favored*, they are not *allowed*.

The second, pertaining to Rule 2–602(b), is the recognition that the trial court "not only has greater knowledge than an appellate court regarding the overall effect of an immediate appeal but a greater interest in whether the case remaining before it should be 'put on ice' while an interlocutory appeal proceeds." *Smith v. Lead, supra*, 386 Md. at 26, 871 A.2d at 553. For that reason, we have regarded trial judges as the "dispatchers" in this regard and accorded them very wide discretion. Finally, we have made very clear that the discretion to *deny* a request for the entry of judgment under Rule 2–602(b) is far greater than the discretion to *grant* one. As noted, we have never had occasion to reverse the denial of such a request, but we have had no hesitancy in countermanding the grant of one when we thought it was inappropriate under the circumstances. Ultimately, the question is whether the case should remain in the trial court until the case is over, which, for good reason, is what the law generally requires.

One anomaly posed by entertaining an appeal from the denial of a Rule 2–602(b) request is that, as a practical matter, the threshold jurisdictional decision to entertain the appeal will almost always dictate the decision on the merits. The footnote in *Starfish Condo.* referenced the situation of a bankruptcy stay likely to be so prolonged as to deprive the party seeking the Rule 2–602(b) judgment "of the means of proceeding further to enforce the right of appeal." Inferentially, at least, denial of the Rule 2–602(b) request under that circumstance would necessarily amount to an abuse of discretion. But how does the Court define when that situation exists? Is a year long enough, or five years, or six months? Does it depend on how many parties are in bankruptcy and how many are not, or what the relationships are between the two groups? Does it matter whether there are cross-claims or counterclaims outstanding between parties in bankruptcy and parties who are not? If there are partial settlements by some but not all defendants alleged to be joint tortfeasors, is it

likely that claims for contribution between or among defendants in bankruptcy and those who are not may be made at some point? Will it depend on the nature of the case? Is it limited to bankruptcy situations, and, if not, what other situations would be eligible?

However this Court may resolve those issues, which historically have been left to the trial court to determine in the context of the case then before it, any decision by the appellate court that the denial of a request to enter a Rule 2–602(b) judgment suffices under its criteria to constitute a final judgment will almost necessarily require a finding that the trial court abused its discretion in denying the request. What would be presented, therefore, is the somewhat anomalous situation whereby the preliminary decision to review the ruling will amount to a determination that the ruling constituted an abuse of discretion. As a practical matter, the right to appeal translates into a right to win the appeal. If the Court is to travel that road, of effectively co-mingling the right to appeal with the merits of the appeal, it must be extremely cautious in doing so. That kind of situation seems more appropriate to be presented in a petition for extraordinary relief through mandamus, which is also very rarely granted (*see Forster v. Hargadon,* 398 Md. 298, 920 A.2d 1049 (2007)), rather than an appeal. Against that backdrop, we look at this case.

Appellants sought to fall within the ambit of the *Starfish Condo.* footnote through an affidavit of one of their lawyers, Armand Volta, and exhibits attached to that affidavit. Mr. Volta claimed extensive expertise and familiarity with ongoing bankruptcy proceedings involving the manufacturers and sellers of asbestos products. He asserted that the "normal course" with respect to a bankrupt manufacturer of asbestos products is to create a trust to settle claims without litigation, through compromise and various ADR techniques, and he briefly described that process. His conclusion was that it was "highly probable that the bankruptcy proceedings relating to the Asbestos Bankrupts in this case will result in full resolution of the plaintiffs' claims ... in this case" and that the

exhaustion of those procedures "would probably take years to accomplish before the Plaintiffs could seek further relief. . . ." Appellants asserted further, in their brief, that "no defendant in Maryland asbestos cases that has filed for bankruptcy has ever emerged out of bankruptcy to join tort litigation."

No evidence was presented with respect to the actual status in bankruptcy of any of the nine bankrupt defendants—where in the process the respective cases stood, any realistic estimate of when the respective bankruptcies may end, whether maintenance of the action against those defendants in the Circuit Court was a prerequisite to pursuing claims against them in the bankruptcy cases, whether appellants could lawfully dismiss those defendants from the Circuit Court action without permission from the Bankruptcy Court and, if not, what the prospects were of getting that permission, and, however those issues might be resolved, what the prospects were of any recovery in the bankruptcy cases. Mr. Volta's affidavit was very general. That information might be highly relevant in light of Mr. Volta's belief that it was "highly probable" that the bankruptcy proceedings would "result in full resolution of the plaintiffs' claims . . . in this case" and appellants' assertion that no Maryland asbestos defendant in bankruptcy "has ever emerged out of bankruptcy to join tort litigation." If those statements are correct, there would seem to be little reason not to dismiss the bankrupt defendants now so that a final judgment could be entered in the normal course, and, if permission of the Bankruptcy Court is required to do that, to attempt to obtain such permission.

■ In looking at whether this is one of those "very infrequent harsh cases" that cries out for a Rule 2–602(b) judgment, we note that it is implicit from appellants' brief and was made explicit at oral argument that appellants are in no way aggrieved by the resolution of their claims against the nonbankrupt asbestos defendants. They are not seeking to appeal because they are unhappy with any judgments entered with respect to those defendants. They merely want an appellate court to allow them to proceed now against the

tobacco defendants that they did not seek to join until the case had been pending for nearly five years.

In that regard, two things are relevant. First, appellants had every opportunity to sue the tobacco defendants years ago, and, in fact, they did so as part of the class action suit in *Philip Morris v. Angeletti, supra.* We did not allow the case to proceed as a class action, but appellants' right to proceed separately was never denied. Second, the very arguments they make in this appeal were made in their petition for mandamus in *Allen v. Murdoch, supra.* In that petition, they argued that the court's dismissal of their claims against the tobacco defendants *and* the court's refusal to enter judgment under Rule 2–602(b) constituted "gross abuses of discretion," "exceeded its authority," and caused them "irreparable harm." As noted, we denied the petition.

Our conclusion is this: Even if there were a case in which the denial by a circuit court of a request to enter judgment under Rule 2–602(b) could be regarded as a final judgment for purposes of allowing an immediate appeal, this is not that case. As to appellants' request that the court "administratively" dismiss the bankrupt asbestos defendants, subject to their being reinstated if and when they emerge from bankruptcy, we note only that we are unaware of any such procedure of "administrative" dismissal subject to reinstatement. For one thing, if the dismissal is for the purpose of allowing a final judgment to be entered, there would be no case left to which the dismissed defendants could be rejoined or reinstated. Moreover, although proceedings against a defendant can be stayed for one reason or another, we have never created any kind of mystic "never-never land" where a defendant is both in and not in a case. Suspended animation does not go that far.

APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANTS.