999 A.2d 1006

**MILLER METAL FABRICATION, INC., et al.**

v.

**Dawn Ellen WALL, et vir.**

**No. 147, Sept. Term, 2009.**

Court of Appeals of Maryland.

July 23, 2010.

Sean P. Edwards (Laura A. Simmons of The Law Offices of Frank F. Daily, P.A. of Hunt Valley, MD), on brief, for petitioners/cross-respondents.

Ernest I. Cornbrooks, III and E.I. Cornbrooks, IV (Webb, Burnett, Cornbrooks, Wilber, Vorhis, Douse & Mason, L.L.P. of Salisbury, MD), on brief, for respondents/cross-petitioners.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BARBERA, J.

This appeal arises out of a products liability action against Petitioner, Miller Metal Fabrication, Inc., and Country Fresh Mushroom Co. ("Country Fresh") in which the Circuit Court for Caroline County granted summary judgment in Petitioner's favor.[1] Because, however, the order granting summary

---

1. Petitioner is also a cross-respondent because we granted the conditional cross-petition of Respondents/Cross–Petitioners Dawn and Kevin

judgment was not a final judgment as to all defendants and was not properly certified under Maryland Rule 2–602(b), we shall not reach the merits of the issues presented to this Court.

## I.

Petitioner custom manufactures machinery, including food processing machinery.[2] The machine at issue here is a brine-filling machine ("the Machine") commissioned by Country Fresh to be fabricated according to a design for a machine previously manufactured by a defunct company named A.K. Robins. Country Fresh commissioned the Machine for use in a mushroom processing plant assembly line at a Hanover Foods Corporation ("Hanover") facility in Ridgely, Maryland.[3] The Machine was installed in Hanover's mushroom processing assembly line to fill buckets of mushrooms with brine.

During the time period relevant to this case, three employees filled buckets of various sizes with mushrooms and placed them on a conveyor belt. The buckets then moved down the belt to the Machine, at which point the Machine's sensors detected the buckets and engaged a carriage system, five nozzles attached to a beam located above the conveyor belt. Once the buckets stopped beneath the carriage system, it would descend until the nozzles were inside the buckets and fill them with brine. After filling the buckets, the carriage system would ascend to the default position above the convey-

Wall. For ease of reference, we refer to Miller Metal as Petitioner and the Walls as Respondents. For reasons to be explained later, Country Fresh Mushroom Co. is not a party to this appeal.

2. Because we do not reach the merits of the issues before us, we recount only the most relevant facts and circumstances. *See Boswell v. Boswell,* 352 Md. 204, 209, 721 A.2d 662, 664 (1998). Moreover, for the sole purpose of providing background, we summarize the facts as recounted by Respondents.

3. Hanover processes and packages mushrooms for Country Fresh at the Ridgely facility.

or belt, and the mushroom buckets continued down the assembly line.

Ms. Wall, a quality control coordinator for Hanover, tested samples of mushroom brine by taking a full bucket off of the belt after the bucket moved out from under the Machine.[4] On May 1, 2003, Ms. Wall was resting her hand on a table behind the Machine, while waiting for it to fill some mushroom buckets so she could take a sample, when the carriage system descended unexpectedly. Before Ms. Wall could remove her hand, the carriage system lowered onto her hand and pulled it inside the carriage system up to her mid forearm. Upon seeing the incident, other Hanover employees ran to Ms. Wall's aid, but they could not lift the carriage system off of her arm. Despite unplugging and plugging back in the Machine, Ms. Wall's armed was trapped for ten minutes before the carriage system ascended and released her arm. Ms. Wall suffered fractures to her hand and wrist, lacerations, and scarring.

*The Lawsuit*

On April 13, 2006, Respondents filed suit against Petitioner and Country Fresh in the Circuit Court for Caroline County. The complaint was comprised of multiple counts, sounding in negligence and strict liability, for design defect, manufacturing defect, failure to warn, breach of an express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, and loss of consortium. On April 16, 2007, Petitioner filed a motion for summary judgment.

In the memorandum supporting the motion, Petitioner argued that the defective design counts failed because the contractor's defense insulated Petitioner from liability.[5] Peti-

---

**4.** Respondent did not file a complaint against Hanover because the Workers' Compensation Act, Md.Code (1999 Repl.Vol., 2005 Supp.), § 9–509 of the Labor & Employment Article, limits Respondent's recovery from her employer to the compensation provided pursuant to that act.

**5.** The contractor's defense shields a manufacturer from liability for injuries caused by a product fabricated according to specifications or

tioner argued that the failure to warn counts failed because any risks associated with the Machine were "open and obvious" and because Petitioner supplied the Machine to a "sophisticated user," [6] which shifted the duty to warn from Petitioner to Hanover. Petitioner further argued that the breach of express warranty and manufacturing defect counts failed because Respondents had provided no evidence that the Machine deviated from the design plans provided and, likewise, provided no evidence of any express statements regarding the Machine's fitness for the "use in the manner in which it was being used and operated." Additionally, Petitioner argued that the count alleging breach of an implied warranty of merchantability must fail because Petitioner fabricated the Machine according to the designs provided by Hanover and thus could not have impliedly warranted for the safety or efficacy of the Machine. At most, Petitioner argued that it could have impliedly warranted "that the [M]achine would be constructed in a workmanlike manner in accordance with the specifications it was provided[.]" Petitioner argued that the count alleging breach of an implied warranty for a particular purpose failed because Respondents failed to establish any evidence that Hanover was relying on Petitioner's expertise and Petitioner merely constructed the Machine according to the design provided by Hanover, an experienced and knowledgeable buyer. After a hearing on September 27, 2007, the

---

plans provided by the purchaser. *Housand v. Bra–Con Indus., Inc.,* 751 F.Supp. 541, 544 (D.Md.1990). This doctrine has not been adopted in Maryland by a reported opinion of a State appellate court. *But see id.* at 544–45 (noting the doctrine's likely applicability in Maryland because of its roots in the Restatement (Second) of Torts, a common source of Maryland tort law).

6. Under the sophisticated user doctrine a manufacturer is insulated from liability for injuries allegedly arising out of the manufacturer's failure to warn if the purchaser was a "knowledgeable industrial user who has reason to know of any dangerous condition which might be inherent in the product." *Housand,* 751 F.Supp. at 544. This Court has not expressly applied the doctrine, but has affirmed, in a summary order, judgment of the Court of Special Appeals in a case applying the doctrine. *Kennedy v. Mobay Corp.,* 325 Md. 385, 601 A.2d 123 (1992) (per curiam), *aff'g* 84 Md.App. 397, 579 A.2d 1191 (1990).

Circuit Court issued an order granting Petitioner's summary judgment motion.

On October 19, 2007, Respondents filed with the Circuit Court a motion for entry of a final judgment pursuant to Maryland Rule 2–602(b).[7] The Rule permits a trial court to certify as final an order that resolves fewer than all of the pending claims or parties. *See Md.-Nat'l Capital Park & Planning Comm'n v. Smith*, 333 Md. 3, 6–7, 633 A.2d 855, 857 (1993). Respondents argued in the motion that certification was proper because, if they proceeded to trial against Country Fresh and obtained a verdict in their favor, "inconsistent outcomes as to the two Defendants would occur." Specifically, Respondents argued that if they obtained a verdict against Country Fresh and then successfully appealed the Circuit Court's grant of summary judgment in Petitioner's favor, the subsequent trial against Petitioner would involve the same issues already tried against Country Fresh and therefore be an inefficient use of judicial resources. Additionally, Respondents argued that, because Country Fresh would likely assert in a motion for summary judgment some of the same arguments as Petitioner's motion for summary judgment, timely appellate resolution of those matters would serve the "interests of justice and judicial economy."

---

7. Rule 2–602, "Judgments not disposing of entire action," provides:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

On October 24, 2007, without the benefit of a hearing, the Circuit Court, "having determined that there is no just reason for delay," granted Respondents' motion. Consequently, the court entered a final judgment based on the order granting summary judgment in Petitioner's favor. The Circuit Court order consisted of a single page and provided no explanation for the court's determination that "there was no just reason for delay."

On November 19, 2007, Respondents timely noted an appeal to the Court of Special Appeals. On appeal, Respondents argued that the Circuit Court had erred in granting summary judgment in Petitioner's favor because a genuine dispute of material fact existed as to each count: defective design, manufacturing defect, failure to warn, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. On September 3, 2009, the Court of Special Appeals, in an unreported opinion, affirmed in part and vacated in part the judgment of the Circuit Court.

The Court of Special Appeals at the outset noted that, even though Respondents' claim was not settled as to all parties when the Circuit Court granted summary judgment, Respondents' appeal was proper because, pursuant to Rule 2–602(b), the Circuit Court had entered a final judgment with respect to Petitioner. The Court of Special Appeals did not address the propriety of the Circuit Court's Rule 2–602(b) certification. Turning to the merits of Respondents' appeal, the court held that, even assuming *arguendo* that the contractor's defense would insulate from liability a custom manufacturer that built a product to customer specifications, a factual dispute existed as to whether Petitioner contributed to the Machine's design and, therefore, the Circuit Court erred in granting summary judgment on the design defect counts. Because, however, Respondents "failed to meet their burden of producing evidence of [Petitioner's] specifications and the Machine's nonconformance," the Court of Special Appeals upheld the Circuit Court's grant of summary judgment on the manufacturing defect counts. As to the counts alleging failure to warn, the

court held that the sophisticated user defense shielded Petitioner from liability because Hanover was a " 'knowledgeable industrial user' that had 'reason to know of any dangerous condition which might be inherent in the product' " and, therefore, affirmed the Circuit Court's grant of summary judgment on these counts. (Citation omitted). The Court of Special Appeals then addressed each of the counts alleging breach of warranty.

The court affirmed the Circuit Court's grant of summary judgment on the breach of express warranty count, concluding that Respondents failed to present any evidence that Petitioner was aware that employees would obtain brine samples and therefore "could not have expressly warranted the Machine's safety for this use." The Court of Special Appeals reversed, however, the Circuit Court's grant of summary judgment with respect to the count alleging breach of implied warranty of merchantability. Construing the facts in the light most favorable to Respondents, the court concluded that Respondents had produced sufficient evidence to create a question of fact as to whether the Machine would " '[p]ass without objection in the trade under the contract description[.]' " (Quoting Md. Code (1999 Repl.Vol., 2005 Supp.), § 2–314(1)(a) of the Commercial Law Article). Finally, discerning no evidence in the record that Petitioner knew that Hanover employees would obtain brine samples near the Machine, the court affirmed the Circuit Court's grant of summary judgment on the count alleging breach of implied warranty for a particular purpose.

Consequently, on October 20, 2009, Petitioner filed with this Court a petition for writ of certiorari, and on November 4, 2009, Respondents filed a conditional cross-petition for writ of certiorari. We granted both petitions. *Miller Metal Fabrication, Inc. v. Wall,* 411 Md. 740, 985 A.2d 538 (2009).[8] As

___

8. The parties presented the following six issues for our consideration:

 1. When a custom builder manufactures a machine according to designs, plans and specifications provided by a customer, can it subsequently be held liable for any alleged design defects in the

mentioned, however, we shall not reach the issues presented because, for the reasons we shall explain, the Circuit Court's certification of the order granting summary judgment in Petitioner's favor did not merit certification pursuant to Rule 2–602(b).[9]

## II.

It is a "long-standing bedrock rule of appellate jurisdiction, practice, and procedure that, unless otherwise provided by law, the right to seek appellate review in this Court or the Court of Special Appeals ordinarily must await the entry

machine, or is it shielded from liability by virtue of the contractor's defense?

2. Can a custom builder rely upon the contractor's defense if it makes minor changes to the design provided to it by substituting parts and materials required by the design that are no longer available?

3. Can a custom builder rely upon the contractor's defense if it makes minor changes to the design provided to it by substituting modern parts and materials that did not exist when the designs were first drafted when there is no evidence or expert testimony that any of the substituted parts or materials were a proximate cause of the accident or injuries?

4. Does the sophisticated user defense extend to claims for breach of implied warranty of merchantability, and if so, did the Court of Special Appeals err when it only applied the sophisticated user defense to Ms. Wall's strict product liability and negligence claims based upon an alleged failure to warn?

5. To survive summary judgment on a breach of implied warranty of merchantability claim, must a plaintiff come forward with admissible evidence in the form of expert testimony as to an alleged defect that is the cause of any alleged malfunction?

Whether the Court of Special Appeals erred in affirming the judgment of the Circuit Court for Caroline County that there was no dispute of material fact regarding Miller Metal's failure to warn of risks related to the operation of the Machine that would not be obvious to normal, reasonable users.

9. The propriety of the Circuit Court's Rule 2–602(b) certification was not among the questions upon which we granted certiorari. We nevertheless do not hesitate to consider the propriety of that certification because, though the precise Rule 2–602(b) issue presented by this case does not implicate the lack of appellate jurisdiction, it implicates appellate court's exercise of its jurisdiction. We explain *infra* why the Court of Special Appeals should not have exercised appellate jurisdiction in this instance.

of a final judgment that disposes of all claims against all parties." *Silbersack v. AC & S, Inc.,* 402 Md. 673, 678, 938 A.2d 855, 857 (2008); *see generally Planning Board v. Mortimer,* 310 Md. 639, 644–48, 530 A.2d 1237, 1239–42 (1987) (outlining the pitfalls of permitting immediate appeals from every order issued in cases involving multiple claims or multiple parties). As stated above, Rule 2–602(b) provides an exception to this principle by permitting a trial court to certify as a final judgment an order adjudicating fewer than all of the claims against all of the parties in a given action. *Schuele v. Case Handyman & Remodeling Servs., LLC,* 412 Md. 555, 567, 989 A.2d 210, 217 (2010). Specifically, Rule 2–602(b) provides, in relevant part, that, "[i]f the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment . . . as to one or more but fewer than all of the claims or parties."

Absent an "express determination that there is no just reason for delay," an order directing the entry of a final judgment pursuant to Rule 2–602(b) is invalid. *See* Rule 2–602(b); *Blucher v. Ekstrom,* 309 Md. 458, 462–63, 524 A.2d 1235, 1237 (1987) (concluding that a trial court order certified as a final judgment under Rule 2–602(b) was invalid because the order did not contain an "express determination of no just reason for delay"). In the present case, the Circuit Court order granting Respondents' motion for entry of a final judgment expressly stated that "there is no just reason for delay" and thus satisfied the express requirements of Rule 2–602(b).

The discretionary authority vested in the trial courts by Rule 2–602 reflects their role as the "dispatcher" of final orders. *Mortimer,* 310 Md. at 647, 530 A.2d at 1241. The Rule grants trial courts this discretionary authority because they sit at the best vantage point from which to determine whether a particular claim warrants an exception to the general rule requiring the entry of a final judgment disposing of all claims against all parties before an appeal may be taken. *Silbersack,* 402 Md. at 678–79, 938 A.2d at 857–58 (acknowledging that the trial judge "normally has a much better grasp

of the situation than an appellate court" and is therefore viewed as the "dispatcher" (internal quotation marks and citation omitted)); *Smith v. Lead,* 386 Md. 12, 26, 871 A.2d 545, 553 (2005) ("[The trial court] not only has greater knowledge than an appellate court regarding the overall effect of an immediate appeal but a greater interest in whether the case remaining before it should be 'put on ice' while an interlocutory appeal proceeds."). Because the discretionary authority conferred by Rule 2–602 enables trial courts to grant exceptions to this "bedrock rule of appellate jurisdiction," however, trial courts must reserve the exercise of this discretion for the " 'very infrequent harsh case.' " *Silbersack,* 402 Md. at 678–79, 938 A.2d at 857–58 (quoting *Diener Enters. v. Miller,* 266 Md. 551, 556, 295 A.2d 470, 473 (1972)); *Diener,* 266 Md. at 555–56, 295 A.2d at 473 ("As a guide to trial judges, we suggest that when they contemplate utilizing the provisions of [the Rule] to enter an appealable judgment they exercise considered discretion."). Thus, though we defer to a trial judge's advantage as the "dispatcher" of final orders, appellate courts retain the authority to review a trial court's exercise of its certification power "to determine if there is anything in the record which establishes the existence of any hardship or unfairness which would justify discretionary departure from the usual rule establishing the time for appeal." *Lead,* 386 Md. at 24–25, 871 A.2d at 552 (internal quotation marks and citation omitted); *see also Mortimer,* 310 Md. at 648, 530 A.2d at 1242 ("The exercise of discretion is reviewable and should not be routinely exercised."); *Diener,* 266 Md. at 555–556, 295 A.2d at 473.

To assist appellate review of trial court decisions directing the entry of a final judgment pursuant to Rule 2–602, the Court of Special Appeals has strongly encouraged trial courts to set forth, in addition to the magic words "no just reason for delay," the reasons supporting such a determination. *Murphy v. Steele Software Sys. Corp.,* 144 Md.App. 384, 394, 798 A.2d 1149, 1154 (2002) ("The court should clearly articulate the reasons and factors underlying its decision to grant . . . certification." (internal quotation marks and citations omitted)); *Canterbury Riding Condo. v. Chesapeake Investors, Inc.,* 66

Md.App. 635, 651, 505 A.2d 858, 866 (1986) ("Although we stop short of adding any rigid requirement, . . . when a trial judge certifies a case as final under Rule 2–602, we nonetheless find it more difficult to affirm the exercise of discretion where no reasons for that exercise are given."). Likewise, this Court has established that the trial court's failure to set forth those reasons leaves the certification determination less insulated from appellate scrutiny. *Miller & Smith v. Casey PMN, LLC*, 412 Md. 230, 245, 987 A.2d 1, 9 (2010)("[W]e will not hesitate to . . . dismiss an appeal upon a finding that the trial court did not articulate a sufficient reason why there was no just reason for delay of an appeal."); *Silbersack*, 402 Md. at 680, 938 A.2d at 858 (stating that, upon determining that certification was not sufficiently justified, "[this Court and the Court of Special Appeals] have 'not hesitated to countermand the entry of a judgment under Rule 2–602(b)[.]' " (quoting *Lead*, 386 Md. at 25, 871 A.2d at 552)).

Even though Rule 2–602 does not expressly require trial courts to set forth an explanation of the basis for the determination that "there is no just reason for delay," such express findings ensure "meaningful appellate review." *Canterbury*, 66 Md.App. at 650–51, 505 A.2d at 865–866 (noting that, because "the interests of judicial economy and the policy against piecemeal appeals are readily apparent considerations militating against certification," the absence of an explanation of a trial court's reasoning supporting certification leaves the court to "speculate as to what the countervailing considerations might be"). In *Canterbury*, the Court of Special Appeals correctly noted that the current iteration of Rule 2–602(b) is derived from Federal Rule of Civil Procedure 54(b) and, accordingly, that court relied on federal cases touting the utility of including in certification orders an explanation of the trial court's reasoning for determining that "there is no just reason for delay." [10] 66 Md.App. at 648–50, 505 A.2d at 865–

---

**10.** The predecessor to Rule 2–602 was Maryland Rule 605a. Because the former and current versions of the rule are not materially different, we do not distinguish between cases addressing the Rule's older and

**224**

66 ("[W]e note that neither Md. Rule 2–602 nor Fed.R.Civ.P. 54(b) requires that the trial court include a statement explaining the reasons for its action. . . . Numerous federal appellate courts, however, have recognized the usefulness of such an explanation, especially where the reasons for the certification . . . are unclear[.]"). Federal interpretations of Rule 54(b) "are especially persuasive in interpreting our own Rule." *Mortimer*, 310 Md. at 644, 530 A.2d at 1240.

A majority of the federal Courts of Appeals have recognized that appellate review of a trial court's determination of "no just reason for delay" is hobbled when the trial court has not provided an explanation of the factors it considered to reach that determination. *See Bldg. Indus. Ass'n v. Babbitt,* 161 F.3d 740, 744–45 (D.C.Cir.1998); *Ebrahimi v. Huntsville Bd. of Educ.,* 114 F.3d 162, 166–67 (11th Cir.1997) ("[W]hen a sound basis for the certification is not obvious and the [trial court] merely repeats the language of the Rule or frames its certification in conclusory terms, we have little choice but to dismiss the appeal for lack of a final judgment."); *Lindsay v. Beneficial Reinsurance Co.,* 59 F.3d 942, 951 (9th Cir.1995) ("The court making a Rule 54(b) determination 'should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order.' " (citation omitted)); *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1336 (4th Cir.1993) ("Where the [trial court] is persuaded that Rule 54(b) certification is appropriate, the [trial court] should state those findings on the record or in its order."); *Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1003 (3d Cir.1992) ("A proper exercise of discretion under Rule 54(b) requires the [trial court] to do more than just recite the 54(b) formula of 'no just reason for delay.' "); *Willhauck v. Halpin,* 953 F.2d 689, 702 n. 11 (1st Cir.1991) ("This circuit has not imposed a 'rigid requirement on [a] [trial court] to prepare a written statement in every case to justify its Rule 54(b) actions.' Rather, in order to promote meaningful appel-

---

newer versions. *See Mortimer,* 310 Md. at 646 n. 4, 530 A.2d at 1241 n. 4.

late review of the [trial court's] exercise of its discretion under Rule 54(b), we have suggested that 'it should ordinarily make specific findings setting forth the reasons for its order.' ") (citations omitted); *Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 629 (2d Cir.1991) ("[I]n making the express determination required under Rule 54(b), [trial courts] should not merely repeat the formulaic language of the rule, but rather should offer a brief, reasoned explanation." (internal quotation marks and citations omitted)); *United States v. Ettrick Wood Prods., Inc.,* 916 F.2d 1211, 1218 (7th Cir.1990) (noting that a trial court's failure to cite Rule 54(b) when directing the entry of a final judgment was less troubling than its "failure to set out reasons for entering judgment" because such failure casts doubt on whether that court has "assess[ed] the desirability of immediate judgment and unequivocally give[n] an affirmative answer" (internal quotation marks and citation omitted)); *Knafel v. Pepsi Cola Bottlers of Akron, Inc.,* 850 F.2d 1155, 1159 (6th Cir.1988) ("This court has made it clear that in entering a Rule 54(b) certification, the [trial court] should explain the factors warranting certification."); *Mooney v. Frierdich,* 784 F.2d 875, 876 (8th Cir.1986) (per curiam) (observing that if a trial court provides no explanation for the exercise of its certification discretion, "our judgment as to the propriety of certification is necessarily speculative").

Because the certification power enables trial courts to grant an exception to a closely guarded condition to appellate jurisdiction, effective appellate review of certification decisions is essential. Encouraging courts to articulate the reasons supporting certification better equips appellate courts to perform this task. *See, e.g., Babbitt,* 161 F.3d at 745 ("[I]n cases in which the [trial court] does not set forth its reasons for determining that there is no just cause for allowing the normal delay, we do not get the benefit of its experience and reasoning." (internal quotation marks and citation omitted)); *Ebrahimi,* 114 F.3d at 166 ("The expression of clear and cogent findings of fact is crucial because it ... facilitates appellate review[.]"); *Braswell,* 2 F.3d at 1336 (observing that the explanation of a trial court's certification analysis aids appel-

late review). Moreover, when trial courts expressly set forth the basis for the determination that there is "no just reason for delay," the presumption against piecemeal appeals is better safeguarded. *Braswell*, 2 F.3d at 1336 (pointing out that encouraging the "exercise" of setting forth the reasons for a finding of "no just reason for delay" aids the trial court's assessment of the equities); *Harriscom*, 947 F.2d at 629–30 (explaining that when the reasons for certification are not obvious the "mere recitation of the language of the rule" does not ensure sufficiently that trial court's engage in the requisite "reasoned analysis" (internal quotation marks and citation omitted)); *Ettrick Wood Prods.*, 916 F.2d at 1218 (noting that encouraging trial courts to provide an explanation of the reasons for certification "ensure[s] a reasoned exercise of discretion").

Despite the benefits of mandating that all certification orders set forth the basis for the trial court's determination of "no just reason for delay," the federal courts have not uniformly interpreted Rule 54(b) to impose that strict requirement. *Compare Anthuis*, 971 F.2d at 1003 (emphasizing that the trial court's failure to set forth the reasons for the exercise of its certification discretion was fatal to the certification), *with Willhauck*, 953 F.2d at 702 n. 11 (noting that a written statement of the trial court's reasons for exercising its certification discretion is not necessary but is suggested). Instead, when faced with a certification decision without any explanation of the trial court's analysis, many of these courts have held that "any deference [an appellate court] might otherwise accord . . . the certification decision will be nullified." *Ebrahimi*, 114 F.3d at 166–67; *see also Braswell*, 2 F.3d at 1336 (acknowledging that, when the trial court's "certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified"); *Ettrick Wood Prods.*, 916 F.2d at 1218 (explaining that a trial court's failure to explain the exercise of its certification power subjects the certification determination to skepticism from appellate courts); *Knafel*, 850 F.2d at 1159 (opining that "[c]ertainly a proper exercise of discretion under Rule 54(b)

requires the [trial court] [to] do more than just recite the 54(b) formula" and when the trial court fails to "articulate the analysis guiding it certification, any deference due the . . . order is nullified" (internal quotation marks and citations omitted)); *Mooney,* 784 F.2d at 876 (declining to "make mandatory a statement of reasons" for the certification).

■ As under federal law, Maryland recognizes a strong presumption against piecemeal appeals because, " 'beyond being inefficient and costly, [piecemeal appeals] can create significant delays, hardship, and procedural problems.' " *Silbersack,* 402 Md. at 679, 938 A.2d at 858 (quoting *Lead,* 386 Md. at 25, 871 A.2d at 553). Moreover, in our effort to emphasize the "limited nature of the discretion accorded under Rule 2–602(b)," *Lead,* 386 Md. at 25, 871 A.2d at 552, we have cited favorably opinions in which the Court of Special Appeals "countermand[ed] the entry of judgment under [the] Rule . . . and dismiss[ed] an appeal upon a finding that the trial court had not articulated a sufficient reason why there was no just reason for delay," *id.,* 871 A.2d at 552; *Silbersack,* 402 Md. at 680, 938 A.2d at 858. Despite our emphasis on the importance of carefully considering the exercise of Rule 2–602(b) discretion and the propensity of this Court and the Court of Special Appeals to dismiss those appeals insufficiently supported, evidently some ambiguity as to the applicable standard of review remains.

■ Thus, we take this opportunity to eliminate any ambiguity and declare expressly the appellate standard of review of certification pursuant to Rule 2–602(b). We adopt the standard applied by a number of federal courts as expressed by the Fourth Circuit in *Braswell:* When a trial court, after expressly finding "no just reason for delay," directs the entry of a final judgment pursuant to Rule 2–602(b), but fails to articulate in the order or on the record the "findings or reasoning in support thereof, the deference normally accorded such a certification is nullified." 2 F.3d at 1336. Although this standard does not automatically invalidate an appeal taken from a certification order for which the trial court has failed to set forth an explanation of the reasons supporting its

finding of "no just reason for delay," that order only will be a valid exercise of the trial court's discretion if the record clearly demonstrates "the existence of any hardship or unfairness" sufficient to "justify discretionary departure from the usual rule establishing the time for appeal." *Diener,* 266 Md. at 555, 295 A.2d at 473; *see also Ebrahimi,* 114 F.3d at 166 ("If the reasons for the entry of the judgment are obvious and remand to the [trial court] will result only in unnecessary delay in the appeal process, we will not require an explanation."); *Ettrick Wood Prods.,* 916 F.2d at 1218 (acknowledging that a failure to provide the rationale for the trial court's certification decision is not fatal "where the reasons are apparent from the record"). As alluded to above, this standard not only will facilitate appellate review of judgments certified under Rule 2–602(b), but also will ensure that Maryland trial courts considering certification carefully weigh the requisite judicial administrative interests against the "exigencies of the case before them." *Diener,* 266 Md. at 556, 295 A.2d at 473; *Silbersack,* 402 Md. at 679, 938 A.2d at 858 (explaining that the purpose of Rule 2–602(b) is to prevent piecemeal appeals); *see also Ebrahimi,* 114 F.3d at 166 (emphasizing that certification "must be reserved for the unusual case in which the costs and risks of ... overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties" (internal quotation marks and citation omitted)). With this standard of appellate review in mind, we now turn to the case at hand.

## III.

As mentioned, the Circuit Court, pursuant to Rule 2–602(b), certified as a final judgment the order granting summary judgment in Petitioner's favor. The order reflecting that decision was entered without the benefit of a hearing, consisted of a single page, and provided no explanation for the court's determination that "there was no just reason for delay." We have established, however, that a trial court's failure to articulate the reasons supporting its finding of "no just reason for delay" is not fatal to the corresponding appeal

if the record clearly demonstrates "the existence of any hardship or unfairness" sufficient to "justify discretionary departure from the usual rule establishing the time for appeal." *Diener*, 266 Md. at 555, 295 A.2d at 473.

 Courts commonly find "no just reason for delay" when delaying an appeal will have a significant adverse economic impact on the party requesting certification. *See, e.g., Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (affirming certification because of the substantial daily economic losses the plaintiff would suffer if the appeal were delayed). Certification is not proper, however, when

> [t]he appellate court may be faced with having the same issues presented to it multiple times; the parties may be forced to assemble records, file briefs and records extracts, and prepare and appear for oral argument on multiple occasions; resolution of the claims remaining in the trial court may be delayed while the partial appeal proceeds, to the detriment of one or more parties and the orderly operation of the trial court; and partial rulings by the appellate court may do more to confuse than clarify the unresolved issues.

*Lead*, 386 Md. at 25–26, 871 A.2d at 553. Certification is also improper when the pending claim, or claims, and the claim subject to appeal "arise from a nexus of fact and law so intertwined that if we decide the one now, we may nonetheless face many of the same questions in determining the other later." *Babbitt*, 161 F.3d at 745; *Ebrahimi*, 114 F.3d at 167 (noting that when the "factual underpinnings of the adjudicated and unadjudicated claims are intertwined, courts should be hesitant to employ Rule 54(b)"). Furthermore, in the context of the certification of an order dismissing certain claims, a trial court's preference for "early review by the appellate court . . . [to] eliminate the necessity for a second trial in the event" of a reversal of those claims is not a proper basis upon which to rest a finding of "no just reason for delay." *Ebrahimi*, 114 F.3d at 168; *see also Murphy*, 144 Md.App. at 394, 798 A.2d at 1155 (dismissing an appeal from a judgment entered pursuant

to a Rule 2–602 certification order because the trial court did not provide the reasons for exercising that discretion and the record suggested "no more than a benefit to the parties and potential judicial economy to the trial court").

Our review of the record does not reveal "hardship or unfairness" sufficient to "justify discretionary departure from the usual rule establishing the time for appeal." *Diener*, 266 Md. at 555, 295 A.2d at 473. Nothing in the record indicates that the parties would suffer significant hardship, financial or otherwise, if required to wait to appeal until after the counts alleged against Country Fresh are resolved and a final judgment is entered as to both parties. Moreover, despite Respondents' arguments to the contrary, we are not persuaded that immediate appellate review of the issues presented in this case would serve the interests of judicial economy. Instead, because Respondents allege against Country Fresh and Petitioner a single claim, albeit comprised of multiple counts, arising out of identical facts, we would be remiss to permit an appeal at this time. *See Babbitt*, 161 F.3d at 745; *Ebrahimi*, 114 F.3d at 167. *Cf. Wilde v. Swanson*, 314 Md. 80, 87–88, 548 A.2d 837, 840–41 (1988) (affirming certification of an order dismissing a claim for lack of venue against a single defendant in an action against multiple defendants because, if erroneous, the order would unnecessarily require the plaintiffs to assert the same claims, arising out of the same occurrence, in two separate actions in two separate courts). Under such circumstances, the risk is great that separate appeals presenting the same issues would arise and therefore certification would be an inefficient use of judicial resources. Finally, speculating (as we must because of the dearth of findings related to the Circuit Court's exercise of its certification discretion) that the Circuit Court granted Respondents' motion for certification to seek the benefit of "early review by the appellate court," we reiterate that this is an improper justification for the exercise of the discretion granted by Rule 2–602(b).

## IV.

Because the record does not support the Circuit Court's finding of "no just reason for delay," we conclude that the

Circuit Court abused its discretion when it granted Respondents' motion to certify pursuant to Rule 2–602(b) the order granting summary judgment in favor of Petitioner. Accordingly, we vacate the judgment Court of Special Appeals and remand the case to that court with directions to vacate the certification order and remand for further proceedings.[11]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CERTIFICATION ORDER AND REMAND TO THE CIRCUIT COURT FOR CAROLINE COUNTY FOR FURTHER PROCEEDINGS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED 50% TO PETITIONER/CROSS–RESPONDENT AND 50% TO THE RESPONDENTS/CROSS–PETITIONERS.**

---

11. Our disposition of this appeal prevents our consideration of the opinion and judgment of the Court of Special Appeals and the parties' respective arguments for and against the intermediate appellate court's various holdings and supporting rationales. We note, however, that in light of this opinion the Circuit Court's order granting summary judgment is no longer a final judgment. The Circuit Court remains at liberty, as it sees fit, to revisit its summary judgment decision in further proceedings.